**John Marc TAYLOR, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1081S291.**

Supreme Court of Indiana.

Dec. 27, 1982.

J. Richard Kiefer, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was charged in a five-count information: Count I, Rape; Counts II and III, Criminal Deviate Conduct; Count IV, Confinement; Count V, Resisting Law Enforcement. He was found guilty of all five counts. He was sentenced to thirty (30) years on Counts I and II, ten (10) years on Count IV, and one year on Count V. All these terms are to run consecutively. Thirty (30) years on Count III was imposed, that term to run concurrently with the others.

The facts are these. On April 19, 1980, one R.S. was employed as a leasing agent at an Indianapolis area apartment complex. At around 3:15 p.m., a man whom she identified as appellant came into the leasing office and expressed an interest in renting an apartment. R.S. took him to a vacant apartment. Once inside appellant drew a handgun. He also showed her a knife. Appellant forced R.S. to disrobe while he took pictures of her with a pocket camera. He then forced her to submit to two acts of sexual intercourse, one act of anal intercourse and fellatio. During the incident he twisted her breasts severely enough to cause bruising and lacerations. He threatened to kill her several times during the incident. After leaving the apartment, R.S. received aid from an apartment complex maintenance man and police were notified immediately of the incident. Appellant was shortly thereafter spotted by police. He fled from them until wrecking his car. He was apprehended inside a home to which he had fled after the wreck.

Appellant claims he was denied the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. The factual basis for this

claim was presented to the trial court by appellant through "Verified Statements" of appellant, appellant's mother and appellant's trial attorney. These statements were a part of the Belated Motion to Correct Error. The record shows appellant was represented by attorney J. Richard Keifer from April 21, 1980, to June 12, 1980. On that date attorney Keifer withdrew from the case because appellant did not pay the promised retainer fee. Attorney Sandy Bryant was appointed pauper counsel on June 25, 1980. He represented appellant at trial.

Appellant claims he was inadequately represented by Bryant because the latter failed to conduct the necessary factual investigation into appellant's insanity defense and failed to review pertinent psychiatric literature that would have enabled him to present a viable insanity defense.

In the Verified Statement of appellant he weaves a bizarre tale of stories allegedly related to him by his father about the state of his parents' marital relationship. Appellant alleges his father told him his mother was a deeply disturbed person who was sexually unfaithful to his father on many occasions. Some of these improprieties supposedly related to appellant by his father are described in detail in the statement.

He alleges his father began telling him these stories in 1979, that he believed the stories (though after his trial his father admitted none of them were true), and that as a result he developed an intense feeling of hatred toward his mother which transformed itself into a similar feeling about all women and drove him to commit the crimes. Appellant further alleged he told attorney Bryant that his father had told him these stories and that Bryant failed to investigate to see, if indeed, appellant's father had ever related such stories to his son.

It is alleged he could have easily done so as his father was incarcerated in the Marion County jail at the same time as appellant on an unrelated rape charge. In related allegations appellant alleges the attorney demonstrated incompetence by interviewing him for only about an hour and a half before the trial, failing to interview his mother adequately, failing to obtain psychiatric records of his father and mother, and only interviewing the two court appointed psychiatrists for a short time prior to their testimony.

Attorney Bryant in his Verified Statement admitted he did not do any research into psychiatric literature, was only able to interview the court appointed psychiatrist for a few minutes, and did not interview appellant's father, whom he knew was incarcerated in the jail at the time. Bryant made no reference in his statement to having been told by appellant that appellant's father had told him of many instances of sexual misconduct by his mother.

In her Verified Statement, appellant's mother states she was interviewed by attorney Bryant on a couple of occasions before trial. She alleged she discussed with Bryant the possibility of hiring a psychiatrist to examine her son to support the insanity defense with additional evidence but that due to time constraints she was unable to do so. She verified the truth of two of appellant's allegations regarding his becoming enraged at her during the adjudication of his parents' divorce.

Appellant concludes the effect of Bryant's failure to do these things was to render his insanity defense ineffective. He asserts had the attorney discovered all the factual information and resource data available he could have successfully rebutted the testimony of the two psychiatrists that appellant was not legally insane at the time the crimes were committed. He concludes the attorney, had he properly prepared himself for the case, could have cross-examined the psychiatrists and examined his mother, who appeared as a witness for appellant in the trial, in such a way as to suggest that as a result of his beliefs about his mother's alleged sexual misconduct he was suffering from a mental disease or defect that rendered him incapable of conforming his conduct to the requirements of the law.

Appellant first invites us to modify the standard by which we determine

whether a defendant has been denied the effective assistance of counsel. Under our test there is a presumption that counsel is competent. Strong and convincing evidence must be presented to rebut the presumption. *Hollonquest v. State,* (1982) Ind., 432 N.E.2d 37; *Lindley v. State,* (1981) Ind., 426 N.E.2d 398; *Hollon v. State,* (1980) Ind., 398 N.E.2d 1273. An appellant is entitled to reversal due to alleged ineffectiveness of counsel only where the proceedings were reduced to a mockery of justice, shocking the conscience of the reviewing court. *Id.* Moreover, we do not second guess attorneys in matters of trial strategy or tactics. *Hollonquest, supra; Lindley, supra; Morris v. State,* (1980) Ind., 409 N.E.2d 608. Finally, in applying the standard of review we look to the totality of the circumstances at trial. *Hollonquest, supra; Lindley, supra; Hollon, supra.*

■ Appellant argues we should adopt the test used by the Seventh Circuit of the United States Court of Appeals in *United States ex rel. Williams v. Twomey* (7th Cir. 1975), 510 F.2d 634, *cert. denied,* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109. This he characterizes as the "minimum standard of professional representation" standard. Whatever its label we have rejected other invitations to adopt this standard. We are not persuaded to do so in this case. *See, Weaver v. State,* (1982) Ind., 432 N.E.2d 5; *Adams v. State,* (1982) Ind., 430 N.E.2d 771; *Baker v. State,* (1980) Ind., 403 N.E.2d 1069, *cert. denied,* 449 U.S. 882, 101 S.Ct. 232, 66 L.Ed.2d 106.

We conclude appellant fails to meet his burden of producing strong and convincing evidence to rebut the presumption of competency. *Hollonquest, supra; Lindley, supra; Hollon, supra.*

■ As to failure to interview appellant's father and use testimony from him to establish a basis for the alleged mental disease or defect, it is reasonable to infer this was a matter of strategy. Appellant's allegations as to the things his father had told him about his mother were, as we have noted, bizarre to say the least. It is an altogether reasonable inference that if in-

deed appellant related such incidents to attorney Bryant, the attorney found them so incredible that he concluded any attempt to persuade the jury that his client actually believed these stories would do the client more harm than good. This is a matter of strategy and tactics that we will not second guess on appeal. *Hollonquest, supra; Lindley, supra; Morris, supra.*

Moreover, we note the mere fact appellant alleges in his Verified Statement that his father told him such events had occurred and further that appellant had related such stories to attorney Bryant is unsupported by any other evidence. As we have noted, attorney Bryant made no reference to having been told of these stories by appellant. Also, there is no statement from appellant's father that he had told his son these stories. Considering the totality of circumstances, appellant fails to present the strong and convincing evidence necessary to rebut the presumption he was competently represented by attorney Bryant. *Hollonquest, supra; Lindley, supra; Hollon, supra.*

■ As to the allegations of incompetency due to the attorney's failure to research psychiatric literature supporting appellant's insanity defense, appellant fails to show how he was harmed by such failure. A showing of harm due to incompetency of counsel is necessary to gain reversal of a conviction. *Rodgers v. State,* (1981) Ind., 415 N.E.2d 57. In the case at bar appellant does not show how the particular form of insanity he alleges he was suffering from, "foil a' deux or trois," relates to the facts of his case in any but the most general way. The mere statement by the attorney in his Verified Statement that he did not do research into psychiatric literature relating to the insanity defense does not constitute the strong and convincing evidence necessary to rebut the presumption of the attorney's competency. *Hollonquest, supra; Lindley, supra; Hollon, supra.* This is especially true in this case where the two court appointed psychiatrists were unequivocal in their findings as to appellant's sanity at the time of the offense. It is also understandable that in light of the psychiatrists' find-

ings it was a strategic decision not to spend time doing research into psychiatric literature in what would likely be a futile attempt to establish appellant's insanity.

 As to the attorney's alleged inadequate preparation and resultant ineffective representation due to failure to more extensively interview appellant's mother and the two psychiatrists who examined him, appellant makes no showing as to what additional information could have been obtained during such interviews. A defendant alleging ineffectiveness of counsel due to lack of preparation as demonstrated by failure to interview witnesses prior to trial is required to show what information the attorney could have elicited from the witnesses had he interviewed them. *Hollon, supra; Crisp v. State,* (1979) Ind., 394 N.E.2d 115. The same principle is all the more applicable where, as here, it is admitted the attorney interviewed the witnesses but claimed the interviews were inadequate.

 As to the allegation of incompetency due to lack of preparation as shown by the attorney's one and one half hour pre-trial interview of appellant, we see no showing of what a more extensive interview with appellant would have accomplished. The mere allegations of superficiality of pre-trial interviews of the defendant by his attorney is an insufficient basis for relief due to ineffective counsel, absent a showing of what additional information defendant would have provided the attorney and how the additional information would have aided in the preparation of his defense. We have stated:

"Minimal consultation does not necessarily show incompetent or ineffective representation. (Cites omitted.) To require reversal, it must be shown that the consultation was so perfunctory that evidence capable of changing the result at trial was not presented." *Jackson v. State,* (1975) 264 Ind. 54, 57, 339 N.E.2d 557, 560.

Such showing is not made in the case at bar.

 As to the failure to obtain the psychiatric records of appellant's father and mother prior to trial, we fail to see what possible relevance such records could have had to appellant's claimed insanity. Appellant fails to show how he was harmed by the alleged inadequacy of preparation in this regard. *Rodgers, supra.*

Appellant also alleges ineffectiveness of counsel due to failure to examine certain items of evidence taken from his home by police. However, he does not state what these items were or how the attorney might have made use of them to support appellant's claim of insanity. Again failure to show how he was harmed by what the attorney did not do precludes him from gaining relief. *Id.*

Considering the totality of the circumstances we conclude appellant fails to present the strong and convincing evidence necessary to rebut the presumption of competency of counsel. *Hollonquest, supra; Lindley, supra; Hollon, supra.*

Appellant claims the trial court erred in imposing consecutive sentences for the crimes of which he was convicted, save the one conviction of Criminal Deviate Conduct for which the sentence was imposed to run concurrently with the others. Appellant contends that because the trial judge failed to state his reasons supporting a finding of the presence of aggravating circumstances the sentences must be imposed to run concurrently. The State answers that since the trial court's only error was failure to set forth reasons for the finding of the presence of aggravating circumstances this Court should remand the case for a more specific statement of such reasons. *See, e.g., Green v. State,* (1981) Ind., 421 N.E.2d 635; *Page v. State,* (1980) Ind., 410 N.E.2d 1304.

I.C. § 35–50–1–2(a) [Burns 1979 Repl.] gives the trial court wide discretion in determining whether sentences upon multiple convictions are to run concurrently or consecutively. Subsection (b) of the statute requires consecutive sentencing in certain situations, none of which apply here. In *Richardson v. State,* (1981) Ind., 429 N.E.2d 229, 231–32, we stated:

"When a judge increases or decreases the basic sentence, suspends the sentence, or imposes consecutive terms of imprisonment, the record should disclose what factors were considered by the judge to be mitigating or aggravating circumstances."

*See also, Page v. State,* (1981) Ind., 424 N.E.2d 1021; *Green v. State,* (1981) Ind., 424 N.E.2d 1014.

 Taken together these cases indicate the trial court's discretion in determining whether terms of imprisonment are to run concurrently or consecutively is not without limits. At the very least the judge must be able to articulate facts in the case that support a finding of the presence of at least one of the aggravating circumstances listed in I.C. § 35–50–1A–7 [Burns 1979 Repl.] before consecutive terms of imprisonment may be imposed.

 In the case at bar the trial judge stated at the sentencing hearing, "[The State] has asked me to find aggravating circumstances in terms of the sentencing, but I will not . . . ." The judge went on to impose the consecutive terms of imprisonment as previously recited.

The trial court's statement specifically indicating no aggravating circumstances are present requires a remand of the case for correction in the sentencing. In light of our holding in *Richardson, supra,* and our decisions after remand of the *Green* and *Page* cases, it is only consistent and fair to conclude that if the trial court specifically finds no aggravating circumstances are present, and I.C. § 35–50–1–2(b) does not apply either, terms of imprisonment must be imposed to run concurrently with one another. Thus, appellant is correct in his conclusion it was error for him to be sentenced to serve consecutive terms of imprisonment.

Our disposition of this issue makes it unnecessary to consider appellant's other allegation of error. The relief he seeks with regard to that error is the changing of the sentence he received in such a way that he will be sentenced to a single thirty (30) year term of imprisonment. This is the same relief he is being afforded by our holding on the issue disposed of above.

We therefore remand this case for correction in sentencing. All terms of imprisonment are to run concurrently. The trial court is in all other things affirmed.

All Justices concur.