**Patrick RAMIREZ, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

**No. PS518.**

Court of Appeals of Indiana,
Second District.

Oct. 26, 1983.

Patrick Ramirez, pro se.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Patrick Ramirez (Ramirez) appeals pro se his convictions under I.C. 35–48–4–3 (Burns Code Ed., Repl.1979) of dealing in a schedule IV controlled substance. Ramirez raises the following issues:

1) whether the trial court erred in denying his pretrial motion to dismiss the information for failure to comply with the agreement on detainers (Agreement), I.C. 35–2.1–2–4 (Burns Code Ed., Repl.1979) (repealed 1982); recodified as I.C. 35–33–10–4 (Burns Code Ed., Supp.1982),

2) whether there was sufficient evidence to support his convictions;

3) whether the trial court committed fundamental error by ordering Ramirez to serve his sentences consecutively; and

4) whether the court erred in calculating his credit time for the days he spent confined awaiting trial sentencing.

On March 20, 1979, Ramirez was charged by information, Cause 424, with three counts of dealing in a schedule IV controlled substance, a class C felony. The incidents on which the charges were based occurred January 28, 1979, March 9, 1979, and March 12, 1979. Then, by a two-count information dated February 6, 1980, Ramirez was charged under Cause 470 with dealing in marijuana, a class D felony, on December 17, 1979 and December 21, 1979. This appeal concerns Cause 424.

The record reveals Ramirez was serving a sentence in March 1981 in the State of Michigan for dealing in cocaine. On March 16, 1981, the prosecuting attorney for the 62nd Judicial District, Howard County, Indiana mailed the warden of the State Prison of Southern Michigan certified copies of the *two*-count information in Cause *470,* dealing in marijuana, requesting the information be filed as a detainer against Ramirez. On June 23, 1981, the prosecutor followed up by mailing an Agreement on Detainers Form V notifying the State Prison of Southern Michigan that Ramirez was charged in Howard Superior Court II with *three* counts of dealing in marijuana under Cause *424.*

The Michigan warden notified Ramirez by Michigan Department of Corrections Agreement on Detainers Form I that an untried Howard County, Indiana information in two counts of dealing in marijuana had been brought to his attention by the Indiana prosecutor. After he was informed of the provisions of the interstate agreement on detainers, Ramirez signed a waiver

form and voluntarily agreed to be returned to Howard County, Indiana to stand trial on two counts of dealing in marijuana.

## I.

Ramirez' first issue presents two questions: 1) whether his presence in Indiana was obtained under the Agreement, I.C. 35–2.1–2–4, on the basis of Cause 424, three counts of dealing in a controlled substance, and 2) if not, what remedy exists for the State's failure to follow the provisions of the Agreement.

The Agreement is a uniform law enacted by the majority of the states and the federal government.[1] Its purpose is to encourage the expeditious and orderly disposition of outstanding charges and detainers based on untried indictments and informations against prisoners. I.C. 35–2.1–2–4, Article 1. The Agreement provides a method by which an imprisoned individual may seek final disposition of the charges contained in a detainer filed against him by another jurisdiction. The Agreement also provides a method by which other jurisdictions may gain temporary custody of a prisoner to try him on outstanding charges for which a detainer has been filed.

The State's interest protected by the Agreement, having a simplified procedure for gaining temporary custody of defendants imprisoned in other jurisdictions, is obvious. The Agreement, however, also protects the interests of imprisoned defendants in "removing the difficulties in securing speedy trials" and removing "the uncertainties which obstruct programs of prisoner treatment and rehabilitation" when a prisoner's status is clouded by the existence of untried charges on which detainers have been lodged. I.C. 35–2.1–2–4, Article 1.

Pursuant to the Agreement, after a detainer is filed,[2] the jurisdiction which filed it may present a written request for temporary custody of the prisoner to appropriate authorities of the state in which the individual is incarcerated. The Agreement provides a thirty-day period shall pass after receipt of the request before the request may be honored. The Agreement further provides,

"[T]he appropriate authorities having custody of the prisoner shall, promptly upon receipt of the officer's written request notify the prisoner and the governor in writing that a request for temporary custody has been made and such notification shall describe the source and contents of said request. The authorities having custody of the prisoner shall also advise him in writing of his rights to counsel, to make representations to the governor withing thirty [30] days, and to contest the legality of his delivery."

I.C. 35–2.1–2–4, Article 9(7).

By mandate of the United States Supreme Court, unless waived, the imprisoned defendant must be afforded an extradition-type hearing before the request for temporary custody is honored. *Cuyler v. Adams,* (1981) 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641. Further, upon request of the state in which the individual is incarcerated, the state requesting temporary custody is required to present a certified copy of the indictment, information, or complaint which forms the basis of the detainer. I.C. 35–2.1–2–4, Article 5(b)(2).

The State contends Ramirez' presence in Indiana was secured under the Agreement on both Cause 424, three counts of dealing in a schedule IV controlled substance and Cause 470, two counts of dealing in marijuana. We disagree.

The certified copy of the two-count information in Cause 470 transmitted to the Michigan authorities was undoubtedly sufficient to serve as a detainer as to that

---

**1.** The Agreement is codified in Michigan as Mich.Comp.Laws Annot. § 780.601 to .608 (1982).

**2.** "Detainer" is not defined by the Agreement. However, a detainer has been described as a "notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." *Webb v. State,* (1982) Ind., 437 N.E.2d 1330, 1331 (quoting S.Rep. No. 21–1356, 91st Cong., 2d Sess. 2 (1970)).

cause. The controversy involves the document subsequently transmitted which incorrectly described the outstanding charge as a three-count information for dealing in *marijuana* under Cause 424. This document was apparently understood by Michigan authorities to refer to the two-count dealing in marijuana information transmitted earlier. The record shows Ramirez was informed in writing of the following outstanding information against him: "Howard County, Indiana—two counts of delivery of marijuana; bench warrant." Record at 559. Further, there is evidence the Michigan authorities verbally informed Ramirez his return to Indiana was requested to stand trial on charges of dealing in Marijuana, a class D felony.

Based on this evidence, a reasonable fact finder could only conclude Ramirez' presence in Indiana on Cause 424, dealing in a schedule IV controlled substance, was secured outside the terms of the Agreement. The fact the Agreement on Detainers Form V transmitted to Michigan had typed upon it "Cause Number 424" is not sufficient evidence to the contrary.

Ramirez' contention on appeal, as in his motion, is the information in Cause 424 should be dismissed because of the State's violation of the provision of the Agreement providing:

> "The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations of [or] complaints which form the basis of the detainer or detainers or for the prosecution on any other charge or charges arising out of the same transaction."

I.C. 35–2.1–2–4, Article 5(d). Therefore, Ramirez contends, because the State was unable under the Agreement to try him on a charge not forming the basis of a detainer or arising out of the same transaction, the information in Cause 424 must be dismissed and his conviction reversed.

The interpretation of this provision of the Agreement is an issue of first impression in Indiana.[3] For the purposes of this discussion, we assume, as Ramirez asserts, that the provision was included in the Agreement to protect imprisoned defendants in his position from unwittingly consenting to be returned to another jurisdiction for trial on minor charges only to be tried, once returned, on far more serious outstanding charges.

Nevertheless, there is no merit to Ramirez' argument the information must be dismissed. Jurisdiction over Ramirez' person was not defeated by the manner in which he was brought before the court to stand trial on the charges in Cause 424. The manner in which a defendant is brought before the court has no effect upon the court's jurisdiction over him. As stated by the United States Supreme Court in *Frisbie v. Collins,* (1952) 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (footnote omitted).

> "This Court has never departed from the rule announced in *Ker v. Illinois,* 119 U.S. 436, 444 [7 S.Ct. 225, 229, 30 L.Ed. 421], that the power of a court to try a person for crime is not impaired by the fact that

---

**3.** Ramirez has directed us to, and independent research has revealed, no Indiana cases concerning this particular provision of the Agreement. We do note the presence of Indiana cases holding violations of the Agreement's provisions designed for the protection of the imprisoned defendant are waived unless timely raised at the trial level. *Scrivener v. State,* (1982) Ind., 441 N.E.2d 954 (speedy trial, Article 3(a);) *Webb v. State,* (1982) Ind., 437 N.E.2d 1330 (return without trial, Article 4(e)).

Our research has uncovered cases in other jurisdictions having factual situations similar to Ramirez'. *See Saunders v. State,* (1978) Del., 397 A.2d 548; *State v. Casuso,* (1977) Iowa,

253 N.W.2d 919 (crime committed while in temporary custody under Agreement); *People v. Browning,* (1981) 108 Mich.App. 281, 310 N.W.2d 365 (waived because not raised before or during trial); *Commonwealth v. Frison,* (1981) 301 Pa.Super. 498, 448 A.2d 18 (defendant's presence at his request); *State v. Tyson,* (1980) Tenn.Cr.App., 603 S.W.2d 748 (habitual criminal charge "arising out of same transaction"); *Bokemeyer v. State,* (1981) Tex.Cr. App., 624 S.W.2d 909 (reindictment of same charge). However, in few cases has the substantive issue been before the court as it is here. *See Brown v. District Court,* (1977) 194 Colo. 225, 571 P.2d 1091.

he had been brought within the court's jurisdiction by reason of a 'forcible abduction'. No persuasive reasons are now presented to justify overruling this line of cases."

We acknowledge one of the purposes of the Agreement, affording imprisoned individuals certain statutory rights, is not served where a jurisdiction prosecutes an individual outside the Agreement. Nevertheless, we fail to see how the other avowed purpose of the Agreement, providing a simplified procedure whereby individuals imprisoned in one jurisdiction may be brought to trial on outstanding charges in another jurisdiction, would be served by dismissing the charge against Ramirez.

Although we do not countenance the State's failure to comply with the provisions of the Agreement as to Cause 424, the State's failure does not warrant dismissal of this case. *See Brown v. District Court*, (1977) 194 Colo. 225, 571 P.2d 1091 (detainer). *Cf. Martin v. State*, (1978) 176 Ind. App. 503, 376 N.E.2d 498 (extradition). This is not to say Ramirez may not have a remedy for the State's failure to file a detainer against him on Cause 424 before trying him in that cause. However, dismissal of the information is not the remedy. The trial court did not commit error in denying his motion to dismiss.

### II.

■ Ramirez, having raised at trial the defense of entrapment under I.C. 35–41–3–9 (Burns Code Ed., Repl.1979), challenges the sufficiency of the evidence showing his predisposition to commit the crime. When the defense of entrapment is raised, the State must prove 1) the prohibited conduct was not the product of the persuasive efforts of law enforcement officials or 2) regardless of law enforcement efforts, the accused was predisposed to engage in the conduct. *Marts v. State*, (1982) Ind., 432 N.E.2d 18.

■ The question of predisposition, one of subjective intent, is for the trier of fact. *Voirol v. State*, (1980) Ind.App., 412 N.E.2d 861. Our standard of review of sufficiency

of the evidence to support a finding of predisposition, as on all sufficiency of the evidence questions, is clear. We will not weigh conflicting evidence nor judge the credibility of the witnesses. Rather, we will look to the evidence most favorable to the State, together with all reasonable inferences which may be drawn therefrom. If there is evidence of probative value to support the decision of the fact finder, the conviction will not be disturbed. *Everroad v. State*, (1982) Ind., 442 N.E.2d 994. Predisposition may be established by circumstantial evidence. *Voirol v. State*, 412 N.E.2d at 863.

■ Here, the evidence reveals a Kokomo police informant, Bruce Hamlin (Hamlin), was approached by Ramirez in January 1979 during Hamlin's employment as a courthouse janitor. Ramirez inquired if Hamlin would be interested in selling some controlled substances for him. Subsequently, on January 28, 1979, at Hamlin's residence, Ramirez sold Hamlin a number of tablets later determined to contain diazepam and phenobarbitol. This buy was not controlled by law enforcement officers and Hamlin paid for the drugs with his own money. He was later reimbursed when he turned the tablets over to the police.

On March 9, 1979, Hamlin, who had been searched and wired for sound by the police, purchased fifty (50) methaqualone, diazepam, and phenobarbital tablets from Ramirez. The police monitored this purchase. No money passed to Ramirez at this time because the transaction was a "front" deal with payment to be made at a later date. On March 12, 1979, again searched and wired for sound, Hamlin paid Ramirez $100 owed for the tablets received on March 9.

Later in the day on March 12, 1979, Hamlin, again searched and wired for sound, purchased an additional fifty tablets containing methaqualone, diazepam, and phenobarbital from Ramirez. The deal was again "fronted" and the tablets were not paid for by Hamlin until March 20, 1979. When Ramirez was arrested pursuant to warrant on March 20, 1979, he was found in

possession of five of the $20 bills the police had given Hamlin to pay for the tablets received from Ramirez on March 12, 1979.

Ramirez contends that because he was not found to possess any additional controlled substances at his arrest and because the evidence shows Hamlin instigated the purchases on January 28, 1979, March 9, 1979, and March 12, 1979, his conviction must be reversed. Ramirez contends he was not predisposed to sell the controlled substance and was thus entrapped as a matter of law. Ramirez is incorrect.

Although the actual purchases were instigated by Hamlin, the evidence shows it was Ramirez who, unsolicited, first approached Hamlin with the suggestion Hamlin sell drugs which Ramirez would supply. Further, the evidence shows not an isolated sale, but a series of transactions in controlled substances between Ramirez and Hamlin. This evidence, albeit circumstantial, is sufficient to support the jury's determination Ramirez was predisposed to sell a schedule IV controlled substance.[4] *See Silva v. State,* (1980) Ind.App., 410 N.E.2d 1342 (multiple sales to officers as one circumstance tending to show predisposition).

■ Ramirez also argues Hamlin's testimony was inherently unbelievable because he was a police informant against whom charges were pending at the time of the transactions with Ramirez. We disagree. Hamlin's veracity was certainly open to question. However, the record shows the jury was made aware of his criminal history and the possibility of benefits flowing to him in exchange for information he provided and his testimony. The jury, who was in a better position than we to pass upon his credibility, apparently chose to believe Hamlin. We cannot say no reasonable person would have reached that conclusion. *Bentley v. State,* (1981) Ind., 414 N.E.2d 573.

III.

Ramirez contends the trial court erred in ordering his sentence for dealing in a schedule IV controlled substance, Cause 424, and his sentence for dealing in marijuana, Cause 470, to be served consecutively. Having failed to object at the sentencing hearing or to raise the issue in his motion to correct errors, Ramirez necessarily claims this sentencing error is fundamental error.

■ I.C. 35–50–1–2 (Burns Code Ed., Repl.1979) provides:

"(a) Except as provided in subsection (b) of this section, the court shall determine whether terms of imprisonment shall be served concurrently or consecutively.

(b) If a person commits a crime:

(1) After having been arrested for another crime; and

(2) Before the date he is discharged from probation, parole, or a term of imprisonment imposed for that other crime;

the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed."

■ Ramirez' argument is twofold. He first contends he was improperly sentenced under I.C. 35–50–1–2(b), the subsection making consecutive sentencing mandatory in certain enumerated situations. He argues his situation does not fall within subsection (b) of the statute with the result his sentence was outside the scope of statutory authority and therefore was fundamental error. We agree with Ramirez that sentencing without statutory authority produces fundamental error. *See Rihl v. State,* (1980) Ind.App., 413 N.E.2d 1046 (prior law vesting authority in trial judge to impose consecutive sentences only where statutorily authorized).

The record of the sentencing hearing shows the sentences for the two crimes were pronounced at the same time. The

---

**4.** The record also contains testimony of another individual to whom Ramirez had been selling schedule IV controlled substances shortly before Ramirez's arrest in March 1979. Ramirez had also inquired whether this individual "could get rid of some of them," *i.e.,* sell some of the substances, for Ramirez. Record at 917.

record further shows the trial judge did not disclose his reasons for imposing consecutive terms. However, Ramirez admits in his brief he was free on bond on Cause 424 when he committed the crime charged in Cause 470, dealing in marijuana.

Ramirez argues that I.C. 35–50–1–2(b) requires mandatory consecutive sentences only where a defendant is *on* parole, probation or serving a term of imprisonment at the time he commits a second offense. Therefore, because he was out on bond and not on probation or imprisoned, Ramirez argues subsection (b) is inapplicable to him.

Initially, we note the statutory language does not require a defendant to be "on" parole, probation or serving a term of imprisonment. Rather, the statutory language speaks of a person who commits a crime during the time period 1) after he is arrested for another crime, and 2) before he is discharged from probation, parole or imprisonment for that other crime. If the legislature had intended the circumstances under which consecutive sentences are mandatory to be limited to the time a defendant is *on* parole, probation, or imprisoned, it is not readily apparent why it included the "after having been arrested" language.

Ramirez directs our attention to the predecessor statute, I.C. 35–8–7.5–1 (Burns Code Ed., Supp.1977), which specifically addressed the issue of a defendant who committed a crime while released on bond on a previous charge. Ramirez argues the repeal of this statute and the substitution of I.C. 35–50–1–2(b) evidences the legislative intent to exclude commission of a crime while out on bond as an instance where consecutive sentences are mandatory. We disagree. *See* Governor's Conference on the Indiana Penal Code (1977) at 142 (interpreting I.C. 35–50–1–2 as follows: "The court may impose consecutive sentences if a person commits a second crime while released on bail, probation, or parole, or while

confined or an escapee from confinement. Otherwise, the court has discretion as to whether to impose consecutive or concurrent sentences for 2 or more crimes.") *See also Chandler v. State,* (1983) Ind., 451 N.E.2d 319 (crime committed while escaped from incarceration; concurrent sentences reversed because consecutive sentences mandatory). *Contra Garrett v. State,* (1980) Ind.App., 411 N.E.2d 692 (escape).

Ramirez cites *Haggard v. State,* (1983) Ind., 445 N.E.2d 969, to support his view. Although at first blush some of the language appears to support his position, a careful reading of *Haggard* reveals the Supreme Court was not interpreting I.C. 35–50–1–2(b) but was simply holding the fact scenario in *Haggard* rendered the mandatory provision of the statute inapplicable.[5] Thus, in imposing consecutive sentences in *Haggard,* the trial court was operating at its discretion as authorized by I.C. 35–50–1–2(a), not by law as provided in I.C. 35–50–1–2(b).

However, even assuming Ramirez is correct in his contention his situation does not fall within subsection (b) of the statute mandating consecutive sentences, the trial judge was not without authority to order consecutive sentences in this case. Subsection (a) of I.C. 35–50–1–2 endows a trial court judge with discretion in ordering consecutive or concurrent sentences in all situations not enumerated in subsection (b).

Thus, Ramirez' second argument, that the judge committed fundamental error in failing to articulate his reasons for imposing the consecutive sentences, is a contention the trial judge abused his statutory discretion. Although such an abuse of judicial discretion is erroneous, *see Brown v. State,* (1982) Ind., 442 N.E.2d 1109; *Taylor v. State,* (1982) Ind., 442 N.E.2d 1087, it does not rise to that level of errors deemed to be fundamental. Therefore, having failed to

**5.** In *Haggard v. State,* (1983) Ind., 445 N.E.2d 969, the trial court ordered the defendant's commitment to be served consecutively to a commitment for offenses in another county. However, the crimes which resulted in the two commitments were all part of the same trans-

action. Therefore, factually, I.C. 35–50–1–2(b) Burns Code Ed., Repl.1979) was inapplicable because an arrest did not intervene between the series of offenses that resulted in the two commitments.

raise this error at the appropriate time, Ramirez has waived it.[6]

### IV.

■ Ramirez' final contention is the trial court erred in failing to grant him 322 days credit time for the time he spent in the Howard County, Indiana jail awaiting trial and sentencing in Cause 424 and Cause 470. The 322 days represent the time between the date of his return to Indiana from his incarceration in Michigan and the date of his sentencing in Cause 424 and Cause 470. Citing *Burnett v. State,* (1982) Ind., 439 N.E.2d 174 and *Dolan v. State,* (1981) Ind. App., 420 N.E.2d 1364, Ramirez contends the 322 days should be credited to the aggregate of the consecutive sentences he received in Cause 424 and Cause 470.

The State argues because Ramirez apparently received credit against his Michigan sentence for the days he was in the Howard County Jail awaiting trial and sentencing on the Indiana drug charges,[7] he is not entitled to also receive credit time for those days in Indiana. The State is incorrect. There is no indication the sentences in Cause 424 and Cause 470 were to run consecutively to the Michigan sentence. Because the Michigan and Indiana sentences must therefore be assumed to be concurrent, it would appear Ramirez was entitled to have the 322 days credited to both his Michigan sentence and to the aggregate of the two Indiana sentences. *See Simms v. State,* (1981) Ind.App., 421 N.E.2d 698; *Dolan v. State,* 420 N.E.2d 1364 (interpreting I.C. 35–30–6–3 (Burns Code Ed.Repl.1979)).

■ However, our review of the record of the proceedings has apprised us the credit time situation is more complicated than the parties' arguments have made it appear. Although not discussed by the parties, the record reveals that in calculating Ramirez' credit time the trial court considered a third Indiana sentence, one arising as a result of a conviction of theft under Cause 427. It appears from the dialogue between the trial judge and Ramirez' attorney at the sentencing hearing that the 322 days were to be credited to Ramirez' theft sentence. Record at 1038. However, there is nothing in the record presented us to indicate the 322 days actually were credited to the theft sentence or to indicate whether the theft sentence was to be served consecutively or concurrently with the drug sentences. Therefore, although the law favors Ramirez' position, we lack sufficient factual data to enable us to apply the law.

Thus, we remand to the trial court with instructions to conduct a hearing to recalculate Ramirez' credit time as applicable to Cause 427 (theft) as well as to Cause 424 and Cause 470 (drug charges).[8] In all other respects, the trial court's decision is affirmed.

BUCHANAN, C.J., concurs.

SULLIVAN, J., concurs.

---

6. In any event, reviewing the record we find in the presentence investigation report numerous aggravating circumstances which would justify imposing consecutive sentences. Given the opportunity by advisement in the motion to correct errors, the trial court easily could have provided a statement of aggravating circumstances justifying imposition of consecutive sentences. Thus, according to our Supreme Court in *Beasley v. State,* (1983) Ind., 445 N.E.2d 1372, the error alleged by Ramirez is not fundamental (inadequate statement of aggravating circumstances to enhance sentence).

7. The Agreement on Detainers, I.C. 35–2.1–2–4, Article 5(f) provides that when a prisoner is in the temporary custody of a requesting state, time being served on the prisoner's sentence in the sending state shall continue to run.

8. The trial court's reconsideration on remand should include an additional factor. Ramirez argues his bail bond in Cause 424 was released two days after his return to Indiana from Michigan. Thus, he contends, there is no doubt his presence in the Howard County Jail was "as a result of" the charges pending in Cause 424. The record presented us in Cause 424 does indeed indicate a bond was released, but the bond is described as an "appeal" bond. Record at 6, 160. Further, the record of the sentencing hearing indicates the bond released was the appeal bond issued in the theft case, Cause 427. The status of bond, if any, in Cause 424 and Cause 470, is not clear from the record. Because the bond status may affect the credit time calculation, *see DeWees v. State,* (1983) Ind.App., 444 N.E.2d 332, the trial court's reconsideration on remand should include this issue.