Clanton KING, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A02–9307–CR–393.

Court of Appeals of Indiana,
Third District.

Dec. 6, 1994.

Mark Small, Bradburn, Swetnam & Small, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Deana McIntire Smith, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Clanton King appeals the revocation of his probation. The State initiated probation revocation proceedings after it came to their attention that King, residing in Minnesota pursuant to the interstate probation compact ("compact")[1], flunked multiple drug tests, failed to inform his probation officer of his current address, and failed to report for six weeks. King raises five issues on appeal which we consolidate into three and restate as follows:

 I. Whether the trial court properly admitted the results of King's urinalyses.

 II. Whether King received ineffective assistance of counsel.

---

1. Ind.Code § 11–13–4–1 *et seq.* (1993). The compact allows interstate supervision of probationers by permitting a probationer, at their request, to move to a receiving state which agrees to oversee the probation. King argues that the compact mandates that Indiana apply the law of Minnesota when conducting revocation proceedings. King bases this argument on the section of the compact which states that "each receiving state will assume the duties of visitation of and supervision over probationers or parolees of any sending state and in the exercise of those duties will be governed by the same standards that prevail for its own probationers and parolees." I.C. § 11–13–4–1(2). We see no language in this section that would compel Indiana courts to apply the laws of another state. The statute simply mandates that the receiving state treat interstate probationers the same as intrastate probationers.

III. Whether the evidence was sufficient to support the revocation.

We affirm.

The facts most favorable to the judgment reveal that King received a four year executed sentence and four years probation for multiple felonies. After serving less than two years, King was released. One of his probation conditions was that he not possess any controlled substance unless prescribed by a physician.

King sought to transfer his probation to Minnesota under the compact. Gary Lundeen, a probation officer in Minnesota, reviewed King's application and accepted it on the condition that King submit to urinalysis drug testing on demand. King agreed to this additional condition. Over the next several months, King flunked many urinalyses, testing positive for cocaine and opiates. Lundeen reported King to Indiana authorities after he went six weeks without contacting Lundeen and failed to supply his current address.

A revocation hearing was held in Indiana after which King was judged to have violated the terms of his probation and ordered to serve the balance of his sentence. This appeal ensued.

## I.

### Suppression of Urinalyses

King first argues that the lower court should have suppressed the results of the urinalyses as they were performed without King first signing a waiver of rights form. King argues that he was coerced into consenting by threats of returning to Indiana.

There is no doubt that urinalysis, when ordered by the State, is a "search" under the Fourth Amendment. *Skinner v. Ry. Labor Executives' Ass'n* (1989), 489 U.S. 602, 617, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639, 659–660; U.S. Const. amend IV. Though, in this case, it is constitutional as King voluntarily consented. *Snyder v. State* (1989), Ind.App., 538 N.E.2d 961, 964, *trans. denied.*

King was fully aware that the drug tests were a condition of Lundeen agreeing to oversee his probation. King petitioned the lower court for permission to move to Minnesota and, thereby, submitted himself to the condition that was placed upon the transfer. The form he signed indicated that he freely accepted the terms set forth by Lundeen rather than remain in Indiana. King submitted to the drug tests voluntarily and thereby waived his right to contest the search.[2] The results of the drug tests were properly admitted into evidence.

## II.

### Ineffective Assistance of Counsel

King next argues that he received ineffective assistance of counsel. King bases this claim on three grounds: failure to consult, poor examination technique, and poor trial advocacy.[3]

Reversal for ineffective assistance of counsel is appropriate only in cases where

---

2. King also argues that the lower court improperly allowed Lundeen, representing the state of Minnesota, to modify the terms of his probation. While it is true that, in general, only the trial court can modify the conditions of probation, *Clark v. State* (1991), Ind.App., 580 N.E.2d 708, 710, the privilege of transfer was premised on King's agreeing to follow the conditions imposed by Minnesota. This was not a modification of King's probation, but an agreement between King and Lundeen, who did not have to accept King's application under any terms. Since King could remain on probation, albeit in Indiana, without accepting these conditions, we cannot agree with King that his probation was modified.

3. King also argues that counsel should have objected to admission of the urinalyses as inadmissible hearsay. King fails to show that such an objection would have been successful if made, *Garrett v. State* (1992), Ind., 602 N.E.2d 139, 141, *reh. denied,* or that the failure resulted in prejudice given that King had already admitted to using cocaine during his probation, *Bellmore v. State* (1992), Ind., 602 N.E.2d 111, 123, *reh. denied.*

a defendant shows both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced the defendant as to deprive him of a fair trial. *Bellmore v. State* (1992), Ind., 602 N.E.2d 111, 123, *reh. denied. Bellmore, supra.* A claim of ineffective assistance must identify the particular claimed errors. It shall be strongly presumed that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. Isolated poor strategy or bad tactics do not necessarily amount to ineffectiveness of counsel. *Id.*

■ First, mere allegations of superficial pretrial consultation do not provide a basis for relief for ineffectiveness of counsel in absence of showing what additional information would have been gained and how it would have affected the outcome. *Taylor v. State* (1982), Ind., 442 N.E.2d 1087, 1091. King has failed to show what witnesses his counsel would have called, or evidence submitted, with more thorough preparation. Further, trial counsel disputes King's characterization of his level of preparation and we see no evidence to overcome the strong presumption of adequate assistance. *Bellmore, supra.*

■ Second, King complains of poor examination technique. Unartfully executed examinations do not necessarily amount to ineffective assistance of counsel. *Clark v. State* (1992), Ind.App., 597 N.E.2d 4, 11, *reh. denied, trans. denied.* King specifically argues error in counsel's failure to move for involuntary dismissal rather than put King on the stand to testify. Ind.Trial Rule 41(B). Contrary to King's argument, the State did not rest its case until after King testified.[4] As such, a motion for involuntary dismissal could not have been made before King's testimony. King has made no showing that a motion for involuntary dismissal would have been successful; there is no prejudice.

■ Finally, King argues that counsel exhibited poor trial advocacy by failing to admit a letter from Lundeen into evidence and not preparing him for direct examination. The letter, allegedly stating that Lundeen and King had a loose method of arranging monthly meetings when convenient, would not have affected the outcome of the hearing as the drug violations were sufficient to revoke King's probation. *Menifee v. State* (1992), Ind.App., 600 N.E.2d 967, 970, *reh. denied,* (1993), Ind.App., 605 N.E.2d 1207. In addition, a history of arranging meetings when convenient does not excuse King for failing to notify Lundeen of his current address and whereabouts.

■ In addition, there was no showing that King was unprepared for direct examination. The proof of the probation violation appearing plain and undisputed, trial counsel's tactic was to argue an illegal modification of probation conditions and to demonstrate that King's violations were not severe enough to warrant revocation.[5] This was a matter of trial tactics which, even if ill-advised, will not prompt reversal. *See Garrett, supra,* at 142. King received effective assistance of counsel.

### III.

### *Sufficiency of the Evidence*

■ Finally, King argues that the evidence was insufficient to support the revoca-

---

4. Clearly, the trial court deviated from the standard sequence of presenting evidence as King testified during the State's case-in-chief. While the judge appears to have done so in an effort to expedite the case, the reason is unimportant as it is within the judge's discretion to vary this sequence. Ind.Trial Rule 43(G).

5. King also argues that counsel should not have allowed him to testify and incriminate himself. This argument calls for speculation as to whether King himself decided to testify as well as what additional steps the State may have undertaken to prove the violations had King not testified. Further, the court already had sufficient evidence to revoke even before King took the stand based upon King's admissions to Lundeen. We will not speculate about more advantageous strategies which could have been employed and will not reverse absent strong and convincing evidence of inadequacy. *Bellmore, supra.* King has failed to provide such convincing evidence.

tion of probation. Probation revocation is governed by I.C. § 35–38–2–3. A revocation hearing is in the nature of a civil proceeding and the alleged violation need be proven only by a preponderance of the evidence. *Menifee, supra.* When the sufficiency of a factual basis is challenged, the court on appeal will neither reweigh the evidence nor judge the credibility of the witnesses, but looks to the evidence most favorable to the State. *Id.* If there is substantial evidence of probative value to support the trial court's decision that the probationer is guilty of any violation, revocation of probation is appropriate. *Id.*

The trial court had a multitude of probation violations upon which to base the revocation. King had failed many drug tests and had not reported his address to Lundeen, as required. The evidence was sufficient for the trial court to find a probation violation.

Affirmed.

FRIEDLANDER and RUCKER, JJ., concur.