## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 24 2016, 8:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ian O'Keefe
Chicago, Illinois

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Matthew Keene Goodwin,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

August 24, 2016

Court of Appeals Case No.
79A05-1510-CR-1790

Appeal from the Tippecanoe
Superior Court

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-1108-FA-19

**May, Judge.**

[1] Matthew Keene Goodwin appeals the revocation of his probation. He raises three issues, which we consolidate and restate as:

1. Whether the trial court abused its discretion when it found he violated his probation; and

2. Whether the trial court abused its discretion by revoking part of his suspended sentence in favor of Purposeful Incarceration at the DOC.[1]

The State cross-appeals for clarification of the disposition. We affirm the revocation and remand for clarification of the dispositional order.

# Facts and Procedural History

[2] On April 2, 2012, Goodwin pled guilty to Class C felony possession of a narcotic drug[2] and Class D felony operating while intoxicated with a prior conviction.[3] He also admitted to a habitual substance abuse allegation.[4] On April 27, 2012, he was "sentenced to 11.5 years with 6.5 executed to include 3

---

[1] The Indiana Department of Correction (IDOC) and the Indiana Court systems began a cooperative project called Purposeful Incarceration wherein the judge sentences "chemically addicted offenders" to the program at the IDOC and notes it will "consider a sentence modification" if the offender successfully completes it. *Marley v. State*, 17 N.E.3d 335, 338 (Ind. Ct. App. 2014) (quoting http://www.in.gov/idoc/2798.htm), *trans. denied*.

[2] Ind. Code § 35-48-4-6(a) (2006).

[3] Ind. Code § 9-30-5-3(a)(1) (2008).

[4] Ind. Code § 35-50-2-10(b) (2006).

years at TCCC [Tippecanoe County Community Corrections]. The Court suspend[ed] 5 years to probation." (Appellee's Supp. App. at 9.)[5]

[3] On March 12, 2015, the State filed a Petition to Revoke Probation. After a hearing, the court revoked 180 days of Goodwin's suspended sentence as it found Goodwin had "violated the terms and conditions of probation by failing to follow Tippecanoe County Probation Department's drug screening policy and by failing to maintain contact with the Tippecanoe County Probation Department." (Appellant's App. at 14.) After serving the 180 days, Goodwin was to return to probation. As a condition of probation, the trial court ordered

> the defendant shall provide a drug screen at the Tippecanoe County Probation Department on July 6, 2015. Further, defendant to provide proof of application to a substance abuse residential facility. If rejected from a residential facility the defendant shall file said rejection information with the Court. The defendant shall also file proof of the defendant having taken steps to attempt to re-enroll at Ivy Tech Community College. The defendant shall submit to a substance abuse evaluation and follow all recommends [sic] and attend no fewer than three (3) NA/AA meetings per week for the first six (6) months and provide proof of same.

(*Id*. at 15.)

---

[5] The sentencing order was not included in either party's Appendix. We found the pronounced sentence in the CCS included in the State's Supplemental Appendix.

[4]     On July 1, 2015, Goodwin was released from the DOC. He immediately reported to probation officer Charles Nielander at the Tippecanoe County Probation Department. Nielander reviewed the probation requirements with Goodwin and gave him until July 6, 2015, to "come up with the funds to pay for the drug screen." (Tr. at 4.) Nielander also told Goodwin it was necessary for him to fill out a new application for Home With Hope,[6] even though he had an application with him, which he had completed in April, 2015.

[5]     When Goodwin reported on July 6, 2015, he did not provide proof of a drug screen or evidence he had reapplied to Home With Hope. Nielander spoke with Home With Hope's director later that week and was told they were holding a bed for Goodwin but had been unable to reach Goodwin at the numbers they had for him. Nielander was to see Goodwin on July 13, 2015, for a probation appointment, so Nielander told the Home With Hope director he would send Goodwin to her after the appointment. Goodwin did not appear at his appointment with Nielander.

[6]     The State filed another petition to revoke probation on July 16, 2015, alleging Goodwin had failed to appear at the July 6, 2015, appointment and had absconded. It later corrected the petition to allege he had "reported but failed to provide proof of taking the drug screen as required," "fail[ed] to provide

---

[6] Home With Hope operates in the Lafayette area and "provides a continuum of care, often following primary treatment or detox for alcoholism and other drug addiction[.]" Home With Hope, http://www.homewithhope.org (last visited Aug. 12, 2016).

proof that he remain[ed] in contact with the Home with Hope [sic] and followed through with the application process," and "fail[ed] to report for his scheduled appointment on July 13, 2015[.]" (Appellant's App. at 23.)

[7] At his revocation hearing, Goodwin denied the violations. He claimed Nielander had told him a drug screen conducted through the Department of Child Services (DCS) would suffice. He claimed he had taken a copy of the application he had filled out in April, 2015, to Home With Hope and they had made a copy of it. He admitted he missed the probation appointment because "I was working on doing my three meetings a week, the Judge ordered me to do and I just, between looking for a job, and with meetings, I just lost track." (Tr. at 13.) The trial court found Goodwin had

> violated the terms of his probation by failing to provide proof of taking the drug screen as required[,] . . . by failing to provide proof that he remained in contact with the Home With Hope and followed through with the application process[,] . . . [and] by failing to report for his scheduled appointment on July 13, 2015.

(Appellant's App. at 28.)

[8] At the disposition hearing, on September 25, 2015, it became clear that due to his prior revocation of probation, and past fees resulting from same, Goodwin was not eligible to re-enter TCCC. The State had also informed the trial court that Goodwin had been arrested when officers were "dispatched [to] an intoxicated person who could barely stand up." (Tr. at 19.) Even though Goodwin asked to be returned to probation, the trial court found a pattern of

Goodwin's inability to maintain contact with probation and follow the drug screen policies. After noting it believed Goodwin was "high when [he] was picked up in [this current revocation]," (*id.* at 32), the trial court thought "the only way of getting [Goodwin] through," (*id.*) was to return him to the DOC to complete the Purposeful Incarceration program and to then serve "a year supervised, six months unsupervised" probation. (*Id.* at 35.)

[9] When asked about his drug and alcohol meetings, Goodwin stated he had been going but that "I didn't have no [sic] sign in sheets, I asked Mr. Nielander for a sign in sheet which he never gave me." (*Id.* at 26.) He had not attempted to re-enroll at Ivy Tech. When asked with whom he lived, Goodwin said, "A friend." (*Id.* at 27.) When asked the name of the friend, Goodwin said, "John Smith." (*Id.*) These responses, along with the circumstances of Goodwin's arrest, prompted the judge to comment,

> I don't believe you. John Smith, really, really? Maybe it is a John Smith that resides at 12th and Greenbush, but you hadn't been doing anything that you were required to do. . . . I think you need help . . .[.] I think purposeful incarceration [sic] may be the only way of getting you through the -- and it's up to you. If you successfully complete the program then you're out.

(*Id.* at 30-32.)

[10] The trial court noted Community Corrections would be ideal, but Goodwin was not eligible for it because he failed its drug screen and did not pay its fees. The trial court then sentenced Goodwin to three years in the DOC's Purposeful Incarceration program, with one and one half years on probation.

# Discussion and Decision

[11] When a trial court finds a person has violated a condition of probation, the trial court may continue the person on probation, extend the probationary period, or order execution of all or part of the sentence that was originally suspended. Ind. Code § 35-38-2-3(g). Probation revocation proceedings are civil in nature and, therefore, alleged violations need be proven by only a preponderance of the evidence. Ind. Code § 35-38-2-3(e). In evaluating the sufficiency of evidence to support probation violations, we will not reweigh evidence or determine witness credibility. *King v. State,* 642 N.E.2d 1389, 1393 (Ind. Ct. App. 1994). Rather, we look only to the evidence most favorable to the State. *Id.* The violation of a single condition of probation is sufficient to support revocation. *Gosha v. State,* 873 N.E.2d 660, 663 (Ind. Ct. App. 2007). We review the sanction imposed in a probation revocation proceeding for abuse of discretion. *Podlusky v. State,* 839 N.E.2d 198, 200 (Ind. Ct. App. 2005).

### *Probation Violation*

[12] Goodwin asserts the trial court abused its discretion by finding he violated his probation because he did not provide proof of taking the drug screen; because he failed to provide proof he had remained in contact with Home With Hope and completed the application process; and because he failed to report to his appointment on July 13, 2015.

[13] Goodwin went to his probation appointment on July 6, 2015, but Nielander testified he "never received any proof that [Goodwin] did a drug screen on July

6th." (Tr. at 4.) Goodwin asserts he was told he could provide evidence of a DCS drug screen. Nielander testified he did not tell Goodwin the probation department would accept a drug screen from DCS. Even if he did, Goodwin never provided such evidence.

[14] Although Nielander told Goodwin to re-apply with Home With Hope, the probation department never received proof of an application or proof of maintenance of contact. The director from Home With Hope told Nielander that Goodwin did "fill out an application," (*id.* at 5), but she had been unable to contact Goodwin using the contact numbers Goodwin had provided to inform him they were holding a bed. Goodwin contends he had gone to Home With Hope on July 1, 2015, but they accepted a copy of the original application filled out in April, 2015. However, because of the $300 entry fee associated with Home With Hope, he was unable to start its program immediately. Even if the application was started, Goodwin never provided proof of it to the probation department and did not maintain contact with Home With Hope.

[15] When Goodwin missed his July 13, 2015 appointment, Nielander also attempted to contact him at the phone numbers provided but they "were not in service at that time." (*Id.* at 6.) Goodwin admitted he missed the appointment on July 13, 2015.

[16] The trial court did not abuse its discretion in finding by a preponderance of evidence Goodwin violated probation. *See Gosha*, 873 N.E.2d at 663 (a single violation is sufficient to support revocation). Goodwin's arguments to the

contrary are invitations to reweigh the evidence, which we cannot do.  *See, e.g., Sanders v. State*, 825 N.E.2d 952, 955 (Ind. Ct. App. 2005) (appellate court will not reweigh the evidence from a probation revocation hearing), *trans. denied*.

### *Sanction*

[17] Goodwin asserts missing his probation appointment was a minor violation, and the punishment for that violation should be revised.  Even if it was "minor," it was not the only violation.  Goodwin's probation was revoked because he did not provide proof of a drug screen, did not stay in contact with Home With Hope, did not provide proof of his application status with Home With Hope, and missed a probation appointment.

[18] Goodwin contends "[t]he trial court abused its discretion by sentencing Goodwin to the DOC because Goodwin did not have the financial means to pay for [TCCC]."  (Appellant's Br. at 12) (capitalization removed).  Goodwin cites *Runyon v. State*, 939 N.E.2d 613 (Ind. 2010), as the basis of his argument.  However, *Runyon* applies only when a court revokes conditional release due merely to the offender's inability to pay fines.  *See* Ind. Code § 35-38-2-3(m) ("Failure to pay fines or costs (including fees) required as a condition of probation may not be the sole basis for commitment to the department of correction.").

[19] This is not why the trial court sent Goodwin to the DOC Purposeful Incarceration program.  The trial court stated specifically, "I think purposeful incarceration [sic] may be the only way of getting you through the—and it's up

to you." (Tr. at 32.) While the trial court considered TCCC, Goodwin told the court he owed TCCC money and he had "failed a drug screen." (*Id.*) As such, TCCC was unwilling to accept him back into its program. While Goodwin argued for return to probation, the trial court dismissed that idea because of Goodwin's pattern of behavior, which led it to believe he needed closer supervision. *See Sanders*, 825 N.E.2d at 957 (given "ample basis for its decision," a trial court's order to serve a suspended sentence is not an abuse of discretion). As such, we find no abuse of discretion in the trial court's order for Goodwin to spend time in the DOC's Purposeful Incarceration Program.

### Cross-Appeal

[20]  The State argues the trial court's disposition of this matter is unclear. Goodwin does not reply to this assertion. In such a case, we do not assume the burden of making the argument for him. Instead, we apply a less stringent standard of review. *Pettiford v. State*, 504 N.E.2d 324, 326 (Ind. Ct. App. 1987). To obtain remand, the State need only establish the trial court committed *prima facie* error. *Id.* In this context, *prima facie* means at first sight, on first appearance, or on the face of it. *Id.* However, we still review the evidence in the light most favorable to the judgment and will remand only if error is demonstrated in the record and by the State's brief. *Id*.

[21]  At the hearing, the trial court recognized the "total time left was four and a half years." (Tr. at 33.) It then sentenced Goodwin to "the three years." (*Id.* at 34.) When the State requested clarification as to the remaining year and a half, the

trial court stated "If there's a modification we'll deal with it at that time. I see, a year supervised, six months unsupervised." (*Id.* at 35.)

[22] On that same day, the trial court entered an order reflecting Goodwin is "sentenced to the Indiana Department of Correction for a period of three (3) years to be directly placed in Purposeful Incarceration." (App. at 30.) Although the order notes the trial court will "consider modification of the sentence on successful completion of Purposeful Incarceration," (*id.*), it does not reflect the trial court's statement regarding one year of supervised probation and six months of unsupervised probation. This order also stated the April 27, 2012, sentencing order would "remain in full force and effect," (*id.* at 31), but that does not clarify how Goodwin should spend his remaining time on probation.

[23] The trial court thereafter entered two abstracts of judgment but neither clarified the conflict between the oral and written sentences.[7] When there is conflict between the trial court's statements, we may remand for clarification. *Ramos v. State*, 869 N.E.2d 1262, 1264 (Ind. Ct. App. 2007). Accordingly, we remand for the trial court to clarify the sanction imposed on Goodwin.

# Conclusion

---

[7] The State filed a Motion to Correct Error, but the case was removed from the trial court's jurisdiction by the present appeal.

As the State proved Goodwin violated his probation and the trial court did not abuse its discretion in the sanction, we affirm. However, due to the ambiguity as to the punishment imposed, we remand for clarification.

Affirmed and remanded.


Baker, J., and Brown, J., concur.