ALLEN J. MARTIN *v.* STATE OF INDIANA

[No. 1-877A170. Filed May 30, 1978. Rehearing denied August 15, 1978.]

*Jerry D. Stilwell, Fair & Stilwell*, of Princeton, for appellant.

*Theodore L. Sendak*, Attorney General of Indiana, *Jane M. Gootee*, Deputy Attorney General, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J. — Defendant-appellant Allen J. Martin appeals from his conviction for First Degree Burglary.[1]

## FACTS

At 1:00 a.m. on September 12, 1976 Arthur McGillem and his wife, Beulah, went to the Heritage Tavern in Princeton, Indiana to have a drink. While at the tavern, Arthur observed that Martin was at the tavern, but the two did not speak to each other. After being in the tavern for about thirty minutes the McGillems returned home and went to bed.

At approximately three o'clock a.m. Martin aroused the McGillems from their sleep by banging on the McGillems' front door. Martin asked Arthur if he could come in and use the McGillems' telephone to report a wreck which Martin had been in. Arthur started to open the door and let Martin in, because he knew Martin by sight, but Beulah slammed the door and told Arthur not to let Martin in. Beulah told Martin that she would call the police and report the accident for him. After Beulah called the police to report the alleged accident the McGillems went back to bed.

Shortly before 4:00 a.m. the McGillems were awakened by a loud crashing sound. Arthur grabbed a knife and ran to the front room where he observed that Martin and a companion had broken down the McGillems' front door and were standing in the living room. As Arthur approached with the knife Martin's companion fled out the door, but Martin remained and pointed a gun at Arthur. After Arthur told Martin that he wasn't afraid of Martin's gun, Martin turned and ran. Beulah again called the police.

As the police were driving toward the McGillems' house one of the police officers saw a gold colored car with Illinois license plates speeding away from the scene. A radio message, concerning the gold colored car, was sent to the Princeton, Indiana police station, from which the message was relayed to the police station at Mt. Carmel, Illinois.

---

1. See IC 1971, 35-13-4-4 (Burns Supp. 1977), repealed October 1, 1977.

Martin, who was driving a gold colored car, was stopped at 4:08 a.m. by the Mt. Carmel police right after he crossed the Wabash River and entered into Illinois. In less than ten minutes two officers from the Princeton Police Department arrived at the police station in Mt. Carmel. After Martin voluntarily signed a waiver of rights, he returned to Indiana with the Princeton police officers. Martin voluntarily appeared in a seven man lineup and was identified by McGillem as the man who had broken into his home about one hour before.

### ISSUES

1. Whether the suspect has a right to be represented by counsel at a lineup conducted before the filing of formal charges where a police investigation has focused on a particular individual.

2. Whether police practices in summary extradition of a suspect, in such a manner as to deny the suspect the opportunity to challenge the extradition in the asylum state and to effectively deny the right to counsel at a police lineup conducted in the asylum state, amount to such a violation of the suspect's rights as to entitle him to a writ of habeas corpus.

3. Whether an accumulation of surprise in the testimony of the prosecution witnesses at trial entitled the defendant to a new trial.

4. Whether the evidence is sufficient to support the conviction where the information charges breaking and entering into a residence with the intent to point a pistol at a particular person and the evidence reveals no social or business relationship or prior hostilities between that person and the defendant.

### DISCUSSION AND DECISION

*Issue One*

There is no merit to Martin's contention that he had a right to have counsel present at the pre-trial lineup. In Indiana the right to counsel does not attach until a judicial adversary proceeding has been initiated against the defendant, that is, after the filing of an affidavit or indictment charging him with a crime. See *Winston v. State* (1975), 263 Ind. 8, 323 N.E.2d 228 and *Kirby v. Illinois* (1972),

406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411. At the time of the lineup in which McGillem identified Martin, no judicial adversary proceeding had yet been initiated; therefore, Martin had no right to consult an attorney at that time.

*Issue Two*

Martin contends that he was denied his constitutional right of due process and his constitutional right to counsel when the Indiana and Illinois Police failed to observe the procedures established by the Uniform Criminal Extradition Act.[2] We do not agree.

The United States Supreme Court in *Frisbie v. Collins* (1952), 342 U.S. 519, 72 S.Ct. 509, 511-512, 96 L.Ed. 541, stated:

> "This Court has never departed from the rule announced in Ker v. Illinois, 119 U.S. 436, 444, 7 S.Ct. 225, 229, 30 L.Ed. 421, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." (Footnote omitted)

In *Sweet v. Howard* (1946), 155 F.2d 715, 717, (7th Cir.) the Court of Appeals of the Seventh Circuit made the following statement concerning a defendant who had been brought to Indiana from California to be tried, where established extradition procedures had not been followed:

> "... It is not a denial of due process of law to return one from another state, even by force and without the formality of extradition procedure, to face criminal charges in the state to which he is returned. If the party is before the court, the court will not inquire how he got there. This is elementary. 25 American Jurisprudence, § 34, p. 169. One may be forcibly taken from one state to another

---

2. See IC 1971, 35-2.1-2-3 (Burns Code Ed.).

and placed in the custody of a court in which proceedings are pending against such person without violating the Constitution of the United States or depriving the court in the holding state of its jurisdiction. Mahon v. Justice, 127 U.S. 700, 8 S.Ct. 1204, 32 L.Ed. 283."

The purpose of the Uniform Extradition Act is to provide an orderly means whereby states can assist each other, or in certain instances be compelled to assist each other, in bringing to justice criminals who have violated the laws of a state or states other than that in which the criminal is being held. The purpose of the Extradition Act is not to help criminals escape justice because certain technical procedures have not been followed. In light of the above we hold that Martin's constitutional rights of counsel and due process were not violated.

*Issue Three*

Martin claims that he was denied a fair trial because the testimonies given at trial by certain of the State's witnesses differed materially from the testimonies given by those same witnesses at the probable cause hearing. Such changes in testimony, he alleges, created surprise and prevented him from adequately defending himself.

The State points out that Martin has waived this issue by failing to request a continuance at trial when the alleged surprises occurred. We agree. In *Tait v. State* (1963), 244 Ind. 35, 188 N.E.2d 537, 546, where one of the defendant's own witnesses gave testimony at trial which was totally different from statements which that witness had made earlier, our Supreme Court said:

"The record does not reveal that at any time during or after the testimony of Stotts appellant requested a continuance or a postponement. Thus, he did not save his point at the trial even if the surprise was material to his case. It has been stated in Mosier v. State (1942), 219 Ind. 669, 671, 40 N.E.2d 698, 699:

'The appellant has made no such showing as entitles him to a new trial for surprise or newly discovered evidence. One who claims surprise at the admission of testimony against him must ask for a postponement of the trial or a continuance so that he may be prepared to meet such testimony. He will not be allowed to speculate on obtaining a favorable verdict and, when it is found against him, claim the right to a new trial on

the ground of surprise. Anderson v. State, 1928, 200 Ind. 143, 161 N.E. 625. A new trial will not be granted merely to procure evidence to contradict or impeach witnesses. Gavalis v. State, 1922, 192 Ind. 42, 135 N.E. 147.' "

*Issue Four*

Martin contends that the evidence in the case at bar is not sufficient to support his conviction of first degree burglary, the elements of which are (1) breaking and entering a dwelling house (2) with intent to commit a felony. See IC 1971, 35-13-4-4, *supra.* The felony which the information alleged that Martin intended to commit was that of aiming a weapon at Arthur McGillem. Martin contends that since the evidence does not show that Martin and McGillem had ever communicated or had social contact with each other, then it would have been impossible for Martin to have intended to aim a weapon at McGillem at the time he broke into McGillem's house. We do not agree.

The evidence clearly shows that as soon as McGillem confronted Martion and his companion in the living room, Martin immediately pointed a gun at McGillem. The jury could reasonably have inferred that at the time that Martin broke into McGillem's home, he intended to point his gun at Arthur McGillem or whoever else might have confronted him. The fact that Martin may have had other purposes in mind when he broke into McGillem's home is irrelevant.

In *Farno v. State* (1974), 159 Ind. App. 627, 308 N.E.2d 724, 725-726, this court said:

"In order to convict Farno of Entering to Commit a Felony, the State was bound to prove, as an essential element, his specific intention to commit a felony (theft) at the time he entered Treva's home. Because such 'intent' is a mental state of the actor, the trier of fact must resort to reasonable inferences based upon examination of the surrounding circumstances to reasonably infer its existence. . . .

If the circumstantial evidence bearing upon this element could reasonably lead to either of two inferences, one of guilt and one of innocence, an appellate tribunal is not free to reweigh the evidence and determine which should have predominated in the mind of the trier of fact. . . .

Our function, then, is a limited one:

'Where the sufficiency of circumstantial evidence is in question, we examine it carefully, not for the purpsoe of finding whether or not it is adequate to overcome every reasonable hypothesis of innocence, but with the view of deciding *whether an inference may be reasonably drawn therefrom tending to support the finding of the trial court. . . .'* . . .

Indiana courts have often recognized that feloniuos intent at the time of entry may be inferred from the fact that a criminal act is committed by the accused *after* the entry. . . ." (Original Emphasis) (Citations omitted)

In light of the above we hold the evidence was sufficient to support Martin's conviction.

Judgment affirmed.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 376 N.E.2d 498.