STATE OF CALIFORNIA, PLAINTIFF-RESPONDENT, v. FRANK
CHRISTOPHER CRUMP, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted June 9, 1981—Decided July 7, 1981.

Before Judges BOTTER, KING and McELROY.

*Levy & Robertson* attorneys for appellant (*Lewis H. Robertson* on the brief).

*John B. Mariano*, Camden County Prosecutor, attorney for respondent (*Howard E. Freed*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

KING, J. A. D.

This case presents the question whether a probationer has a right to a hearing in the "receiving state," New Jersey, where the "sending state," California, has revoked consent to out-of-state supervision and has claimed that a violation of probation has occurred. Our pertinent statute is titled "Compact Between States Relating to Persons Convicted of Crime on Probation or Parole." *N.J.S.A.* 2A:168–14 *et seq.* The act has also been called the Uniform Compact Act or the Uniform Act for Out-of-State Parole and Probation Supervision. It is the New Jersey by-product of the federal statute which states that:

> The consent of Congress is hereby given to any two or more States to enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies, and to establish such agencies, joint or otherwise, as they may deem desirable for making effective such agreements and compacts. [4 *U.S.C.A.* § 112(a)]

This interstate compact has now been adopted by all states. New Jersey's version was originally adopted as *R.S.* 2:119–13; *L.*1936, *c.* 41, § 2. *See In re Casemento*, 24 *N.J.Misc.* 345, 49 *A.* 2d 437 (C.P.1945). The compact was designed to permit out-of-state supervision of probationers and parolees where agreeable to sister states. A secondary purpose was to facilitate return to the sending state "without the necessity of bringing formal extradition proceedings" of those at conditional liberty who violate their release terms. *Louisiana v. Aronson*, 105 *N.J.Super.* 410, 413 (App.Div.), aff'd 54 *N.J.* 238 (1969). Subsection 3 of *N.J.S.A.* 2A:168–14 is the key section to the retaking of alleged probation or parole violators by the sending state:

The duly accredited officers of a sending state may at all times enter a receiving state and there apprehend and retake any person on probation or parole. For that purpose no formalities will be required other than establishing the authority of the officer and the identity of the person to be retaken. All legal requirements to obtain extradition of fugitives from justice are hereby expressly waived on the part of states party hereto, as to such persons. *The decision of the sending state to retake a person on probation or parole shall be conclusive upon and not reviewable within the receiving state*: provided, however, that if at the time when a state seeks to retake a probationer or parolee there should be pending against him within the receiving state any criminal charge, or he should be suspected of having committed within such state a criminal offense, he shall not be retaken without the consent of the receiving state until discharged from prosecution or from imprisonment for such offense. [Emphasis supplied]

Appellant Crump urges that despite the italicized language federal constitutional considerations emanating from the United States Supreme Court's decisions in *Morrissey v. Brewer*, 408 *U.S.* 471, 92 S.Ct. 2593, 33 *L.Ed.*2d 484 (1972) (due process on parole revocation), and *Gagnon v. Scarpelli*, 411 *U.S.* 778, 93 *S.Ct.* 1756, 36 *L.Ed.*2d 656 (1973) (due process on probation revocation), require an initial probation revocation hearing in New Jersey in the circumstances of this particular case.

Appellant Crump has been serving a term of supervised probation in Camden County, New Jersey, following a criminal conviction in the State of California. On April 17, 1981 a bench warrant was issued from the Superior Court of California, County of Los Angeles, for the arrest of Crump for violation of his probation. An arrest warrant was forwarded to Collingswood, appellant's last known address. Thereafter the Camden County Prosecutor's Office issued a fugitive warrant for probation violation. *N.J.S.A.* 2A:160–21. On May 8 appellant was arrested and taken to the Camden County Jail. On May 11 appellant was brought before a judge of the Law Division with retained counsel of his selection. The assistant prosecutor relied on the Uniform Compact Act and resisted appellant's application for any type of hearing in New Jersey before his surrender to the California authorities for transfer.

Appellant's counsel informed the judge that his New Jersey probation was under the supervision of Camden County proba-

tion officer Ostrow. Counsel represented to the court that "I had a conversation with the probation officer, Mr. Ostrow, and that Mr. Ostrow pointed out that Mr. Crump was a generally cooperative probationer and had done what it was that he was required to do." The prosecutor rejoined that "the basis of violation of probation is nonpayment of a fine [$5,000] due in California" and that any initial revocation hearing must be held in California. The judge denied appellant's application for a preliminary probation revocation hearing and for leave to file a writ of *habeas corpus*; he allowed a 72-hour stay of appellant's surrender to California authorities to permit application for relief to this court. On May 14 we granted appellant's application for a stay pending final hearing and accelerated the appeal on our calendar for resolution on the merits. *R.* 2:9–2.

At argument in chambers on the stay application it became apparent that a dispute over the method of payment of the fine might be the cause for the alleged probation violation. Appellant's counsel contended that he was told by the local officer to "hold off" paying the fine until the method of installment and identity of the recipient could be clarified with the California authorities. Counsel represented that in the interim since arrest the fine had been tendered to the California court which imposed it. The assistant prosecutor was unable to provide any details of the violation alleged, except to say that California wanted defendant whether or not the fine was tendered and paid.

Appellant relies on *Morrissey v. Brewer, supra,* 408 *U.S.* at 485, 92 *S.Ct.* at 2602, in which court stated in 1972 that

... Due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest as promptly as convenient after arrest while information is fresh and sources are available... Such an inquiry should be seen as in the nature of a "preliminary hearing" to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of probation conditions.

In 1973, in *Gagnon v. Scarpelli, supra,* 411 U.S. at 782, 93 *S.Ct.* at 1759, a case involving the Uniform Compact Act, the high

court extended the due process guarantees conferred on parolees by *Morrissey* to probationers. Although the central issue in *Gagnon* was the right to appointed counsel, an issue not here implicated, the Supreme Court perceptively anticipated the potential impact of its decision upon the Uniform Compact Act, stating in footnote 5:

> Petitioner argues, in addition, that the *Morrissey* hearing requirements impose serious practical problems in cases such as the present one in which a probationer or parolee is allowed to leave the convicting State for supervision in another State. Such arrangements are made pursuant to an interstate compact adopted by all of the States, including Wisconsin. Wis.Stat.Ann. § 57.13 (1957). Petitioner's brief asserts that as of June 30, 1972, Wisconsin had a total of 642 parolees and probationers under supervision in other States and that incomplete statistics as of June 30, 1971, indicated a national total of 24,693 persons under out-of-state supervision. Brief for Petitioner.
>
> *Some amount of disruption inevitably attends any new constitutional ruling. We are confident, however, that modification of the interstate compact can remove without undue strain the more serious technical hurdles to compliance with Morrissey.* An additional comment is warranted with respect to the rights to present witnesses and to confront and cross-examine adverse witnesses. Petitioner's greatest concern is with the difficulty and expense of procuring witnesses from perhaps thousands of miles away. While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence. *Nor did we intend to foreclose the States from holding both the preliminary and the final hearings at the place of violation or from developing other creative solutions to the practical difficulties of the Morrissey requirements.* [At 783, 93 *S.Ct.* at 1760; emphasis supplied]

In the circumstances, we are persuaded that appellant's contention that a preliminary revocation hearing be held in this receiving state has merit.[1] The hearing should determine if a *prima facie* case of probation violation has been made out. It may be that the evidence at the hearing will demonstrate that appellant at all times attempted to comply with the conditions of probation but was prevented from doing so by administrative

---

[1] *Accord:* Fisher v. Crist, Mont., *594 P.2d 1140 (Sup.Ct.1979);* contra, Ogden v. Klundt, *15* Wash.App. *475, 550 P.2d 36 (Ct.App.1976);* see, also, *State v. Cady,* 72 *Wis.2d* 311, 240 *N.W.2d* 626 (Sup.Ct.1976); *Marshall v. Smith, 49* App.Div.2d *808, 373* N.Y.S.2d *249, 250 (1975).*

32

confusion, as his attorney suggests. Or it may appear that appellant has been uncooperative and obdurate in performing his end of his bargain for his liberty. This may swiftly be determined and he will be fairly returned to the sending sovereign. In our view, the great distance between the jurisdictions is an especially compelling reason for some type of hearing in this receiving state. The inconvenience to all is considerable if the alleged violation is unfounded.[2] If the probationer were from a contiguous or nearby jurisdiction, the need for a preliminary hearing in this State might be less compelling.

Reversed and remanded for a preliminary hearing on the appellant's alleged violation of his New Jersey-supervised probation.

---

[2]Justice Powell pointed up in *Gagnon* that one Wisconsin study disclosed the revocation rate at 34.5% of all cases in which parole or probation violations were alleged.