## Kenneth M. Hayes, petitioner.

Bristol. June 11, 1984. — September 27, 1984.

Present: Armstrong, Cutter, & Rose, JJ.

*Extradition and Rendition. Constitutional Law,* Extradition.

An interstate rendition of a probationer must be preceded by an independent determination of probable cause, which need not be made by a judicial officer. [587-589]

The petitioner in a habeas corpus proceeding, who had been convicted of a crime in Wisconsin and placed on probation, was not entitled to proceedings in Massachusetts to determine whether there was probable cause to conclude that he had violated the terms of his probation, where the claimed probation violation was alleged to have occurred in Wisconsin and where the rendition documents showed that an independent determination of probable cause had been made in Wisconsin. [589-591]

Petition filed in the Superior Court Department on August 26, 1982.

The case was heard by *Ponte, J.*

*John P. Letourneau* for the petitioner.

*Raymond P. Lamb,* Assistant Attorney General, for the respondents.

Rose, J. The petitioner appeals from an order of the Superior Court denying his petition for a writ of habeas corpus, G. L. c. 276, § 19. The petition challenges the legality of proceedings for the rendition of the petitioner to the State of Wisconsin for an alleged violation of his Wisconsin probation.

In March, 1982, Hayes was arrested on the basis of information that he was wanted by Wisconsin officials for an alleged violation of probation imposed on his conviction for theft, a crime punishable in Wisconsin by imprisonment for a term exceeding one year. G. L. c. 276, § 20B. See Wis. Stat. Ann. §§ 943.20(1)(a) & (3)(b) (West 1982). He was released on bail pending arrest on a Governor's warrant. G. L. c. 276,

§ 20D. In August, 1982, the Governor's warrant was issued in response to a Wisconsin demand for rendition.[1] Hayes was again arrested and released on bail. In subsequently denying the petition, the Superior Court judge rejected Hayes' claim that the demanding papers were deficient in that they were not supported by a probable cause determination that Hayes had violated his probation. A single justice of this court stayed further attempts to return Hayes pending appeal (see *Upton, petitioner,* 387 Mass. 359, 370 [1982]), in part because "there is no Massachusetts authority which decides the question whether a request for rendition of a probationer under G. L. c. 276, § 14, requires a preliminary showing that probable cause exists to conclude that the probationer has violated the terms of his probation." Having now been given the benefit of the parties' briefs and an appendix, as well as time to review Wisconsin law, we decide that a limited probable cause showing is required and that it was satisfied in this case.

1. *Background.* In 1972, the United States Supreme Court held in *Morrissey* v. *Brewer,* 408 U.S. 471, 481-487 (1972), that a parolee enjoys a protectable, albeit "indeterminate," liberty interest in retaining parole status and, therefore, "[i]ts termination calls for some orderly process, however informal." *Id.* at 482. The Court recognized two stages of parole revocation: The first occurs when the parolee is arrested and detained, and the second occurs when parole is finally revoked. Noting that there is typically a substantial time lag between arrest and final determination and that the parolee is often arrested at a

---

[1] The papers forwarded from Wisconsin include: the Governor's demand for interstate rendition; a "judgment of conviction, sentence withheld," which indicates that in March, 1981, a Wisconsin court imposed two years of probation on the petitioner's conviction for a 1980 felony (theft); an "application for requisition" to the Governor of Wisconsin from a representative of the Wisconsin State Department of Health and Social Services Division of Corrections, which requests the return of the petitioner and alleges a breach of the terms of probation as appearing in an annexed probation violation warrant; the "probation violation warrant," which alleges that the petitioner committed a breach of probation terms before he left Wisconsin by forging and cashing a stolen State income tax return check; and, finally, several authenticating documents.

place distant from the State institution to which he may be returned before the final decision, the Court concluded "due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." *Id.* at 485.

The first stage hearing envisaged by *Morrissey* is undertaken by an "independent decisionmaker" whose job is "to determine whether there is probable cause to believe [that the arrested parolee] has committed a parole violation." *Id.* at 486-487. Although worded in the decision as a "minimal inquiry," the preliminary hearing affords a parolee many adversary safeguards which we summarize in the margin.[2] If after the preliminary hearing the decisionmaker concludes that probable cause exists, the determination is sufficient to warrant continued detention and return to the State correctional institution pending a final decision. *Morrissey, supra.* See generally, Cohen, The Law of Probation and Parole §§ 11.03-11.07, 13.01-13.16 (1983).

One year after *Morrissey,* the Supreme Court had no difficulty extending the parolee's due process revocation rights to revocation proceedings commenced against probationers. "[A] probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey* v. *Brewer, supra.*" *Gagnon* v. *Scarpelli,* 411 U.S. 778, 782 (1973).

In 1975, a parallel development occurred in the field of pretrial rights of accused persons. In *Gerstein* v. *Pugh,* 420 U.S. 103, 114 & 125 (1975), the Court held that accused persons are entitled under the Fourth Amendment to the United States Constitution to a fair and reliable judicial determination of probable cause prior to any significant pretrial restraint of

---

[2] The parolee or probationer is to be given notice of the preliminary hearing and "may appear and speak in his own behalf [and] may bring letters, documents, or individuals who can give relevant information to the hearing officer." 408 U.S. at 487. There are limited rights to confrontation and cross-examination, and the hearing officer has the duty to summarize the proceedings and to determine whether probable cause exists. *Ibid.*

liberty, and that the determination must be made either before or promptly after arrest. The consequences of the accused's arrest and prolonged detention pending trial — much like a probationer's arrest and detention pending final decision — "imperil the suspect's job, interrupt his source of income, and impair his family relationships." *Id.* at 114. See *Morrissey, supra* at 482. Thus, "[w]hen the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty." *Gerstein, supra* at 114.

However, *Gerstein,* at 119-123, rejected the contention that the determination of probable cause must be accompanied by the safeguards of full adversary proceedings — counsel, confrontation, cross-examination, and compulsory process for witnesses. Instead, a nonadversary proceeding based on hearsay and written testimony, and conducted in the absence of the accused, was held sufficient for a probable cause determination. The *Gerstein* court distinguished *Morrissey* and *Gagnon* (both of which apparently had afforded parolees and probationers greater adversary safeguards at preliminary hearings for detention pending final decision than were afforded accused persons in *Gerstein*) on two grounds: (1) that the "preliminary [*Morrissey*] hearing, more than the probable cause determination required by the Fourth Amendment [in *Gerstein*], serves the purpose of gathering and preserving live testimony, since the final revocation hearing frequently is held at some distance from the place where the violation occurred," and (2) that greater safeguards were required in the revocation context because revocation "proceedings may offer less protection from initial error than the more formal criminal process." *Gerstein, supra* at 121 n.22.

The petitioner here claims entitlement to the *Morrissey-Gagnon* preliminary hearing prior to his rendition and concomitant infringement of his liberty as a probationer. As support, he analogizes to law, accepted in this Commonwealth, which affords accused persons the right to a judicial determination of probable cause under *Gerstein* v. *Pugh,* 420 U.S. at 114, prior to rendition. See *Ierardi* v. *Gunter,* 528 F.2d 929 (1st Cir.

1976); *Consalvi, petitioner,* 376 Mass. 699, 700-701 (1978); *Whitehouse, petitioner, ante* 455 (1984). See also *Michigan v. Doran,* 439 U.S. 282, 290-294 (1978) (Blackmun, J., concurring). In short, the petitioner's argument is that, if an accused's *Gerstein* preliminary hearing is a prerequisite to rendition, a probationer's *Morrissey-Gagnon* preliminary hearing ought also to be a prerequisite to rendition where a violation of parole is asserted. One jurisdiction has decided the issue adversely to the defendant, see *Bryan* v. *Conn,* 187 Colo. 275, 279 (1975), and *Wynsma* v. *Leach,* 189 Colo. 59, 63 (1975); we find no other case which decides the point.

The petitioner's argument is best analyzed in three segments: (1) is a probationer entitled to any preliminary probable cause showing prior to rendition; if so (2) what is the scope of that hearing; and (3) what is the asylum State court's role in assuring that the probationer has been afforded that hearing?

2. *Probable cause.* Every indication in the Supreme Court cases cited above leads us to conclude that a probationer is entitled to some probable cause determination prior to rendition. Indeed, the difficulties posed by this case — that the *Morrissey* hearing requirement imposes serious practical problems in cases in which a probationer or parolee is allowed to leave the convicting State for another State — were anticipated in the *Gagnon* decision. Yet the *Gagnon* Court dismissed the difficulties in a footnote, stating that "[s]ome amount of disruption inevitably attends any new constitutional ruling." *Gagnon, supra* at 782 n.5. *Morrissey* and *Gagnon* recognize that the parolee's or probationer's liberty interest is infringed at the early stage by both prolonged detention and, when the arrest occurs at a place distant from the correctional institution, forced return. To protect the parolee's or probationer's liberty, a preliminary hearing is required "as promptly as convenient after arrest" (*Morrissey, supra* at 485) which, in the context of rendition, means before the alleged fugitive's forced return. Cf. *Consalvi, petitioner,* 376 Mass. 699, 701 (1978).

The rationale of cases which extend *Gerstein* Fourth Amendment rights to rendition proceedings is that "the restraint of liberty incident to interstate rendition is no less substantial than

the detention occasioned by the execution of a prosecutor's information, the procedure assailed in *Gerstein*. 'At best, [rendition] means an extended period of detention, involving custody pending administrative arrangements in two states as well as forced travel in between. At worst it means separation from a familiar jurisdiction and effective denial of the support of family, friends and familiar advisors.' *Ierardi* v. *Gunter,* 528 F.2d 929, 930 (1st Cir. 1976)." *Consalvi, petitioner,* 376 Mass. at 701. The same rationale applies with equal force when rendition is sought for a probationer who, with the consent of the demanding State, has resided in the asylum State and formed "the enduring attachments of normal life." *Morrissey, supra* at 482. We conclude that a probationer's conditional liberty, as recognized by *Morrissey* and *Gagnon,* cannot be curtailed arbitrarily by rendition proceedings based merely on an allegation from the petitioner's probation officer that a violation has been committed. A contrary conclusion would offend the principles of the *Morrissey* and *Gagnon* decisions.

3. *Scope of determination.* However, we think that where, as is the situation here, the claimed probation violation is alleged to have occurred in the demanding State, the full *Morrissey-Gagnon* preliminary hearing need not be held in the asylum State as a prerequisite to rendition of the probationer. Since the place of the probation violation and the site of the final revocation hearing are within the same State, i.e., the demanding State, the need for preservation of live testimony is greatly diminished while the convenience and efficacy of conducting the hearing in the demanding State are increased due to the presence of witnesses and evidence. Moreover, when revocation is initially sought through the rendition process, the formal rendition procedures imposed on the demanding State tend to safeguard against the possibility of initial error in revocation proceedings.

At bottom, in these circumstances, the probationer's claim to fair procedures presents no more compelling a claim than that of an accused person; indeed, it would be anomalous to hold that a probationer is afforded greater rights in rendition proceedings than those afforded a person accused — but not yet

convicted — of a crime. Moreover, the Supreme Court "did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions and documentary evidence." *Gagnon, supra* at 783 n.5. We are, therefore, of opinion that when rendition of a probationer is sought for an alleged violation of probation occurring in the demanding State, the probationer is entitled to a *Gerstein*-type nonadversary proceeding to determine whether there is a probable cause to believe the probationer has committed a violation of the conditions of probation. Cf. 3 LaFave, Search and Seizure § 10.10(d), at 443 (1978). As in *Gerstein,* the determination may be made in the absence of the probationer and without notice. Thus, the demanding State can, and often does, produce such a determination prior to seeking rendition.

Unlike in *Gerstein,* however, we do not think that the reviewing officer need be a judicial officer. "The granting and revocation of parole [or probation] are matters traditionally handled by administrative officers." *Morrissey, supra* at 486. Therefore, due process requires "only that the hearing be conducted by some person *other* than one initially dealing with the case . . . such as a parole officer other than the one who has made the report of parole [or probation] violations" (emphasis original). *Ibid.*

4. *Asylum court review. Michigan* v. *Doran,* 439 U.S. at 290, made the point that the rendition clause of the United States Constitution (Art. IV, § 2, cl. 2) prohibits an asylum State from conducting its own probable cause hearing if the rendition documents on their face contain a statement indicating that the probable cause determination has already been made in the demanding State. Even in the absence of a clear statement of probable cause, the demanding State court's review is conclusive if it can be inferred from the rendition documents that such a determination was in fact made by the appropriate demanding State officials. See *Whitehouse, petitioner, ante* 455 (1984).

5. *The Wisconsin papers.* It can be inferred from the rendition documents in the present case that, despite the absence of

an explicit statement, a Wisconsin "independent decision-maker" has already made a preliminary determination "whether there is probable cause to believe [the probationer] has committed a [probation] violation." *Morrissey* v. *Brewer,* 408 U.S. at 486-487.

When we review the relevant sources, which include the rendition documents, the assertion of a right to rendition by the demanding State and the demanding State's probation and parole revocation practice (see *Whitehouse, petitioner* at 458), it appears that Wisconsin probation officials made a preliminary determination of probable cause. The probation violation warrant in the present case details the alleged probation violation, and states a basis for concluding that the petitioner committed the violation.[3] It is signed by a supervisory probation officer and is incorporated by reference in the properly authenticated "application for requisition" signed by a representative of the Department of Health and Social Services. It also appears from the date on the warrant and the petitioner's testimony at the hearing that Wisconsin officials had not composed the warrant until after an investigation into the alleged probation violation had been completed. Under these circumstances, the probation violation warrant appears to parallel the Wisconsin procedure known as "case review,"[4] and does not appear to be a summary order issued without a neutral party's determination of probable cause "sufficient . . . for the officer executing it to take the probationer to court or to prison." Wis. Stat. Ann. § 973.10(3)

---

[3] It avers: "Hayes' fingerprints have been identified on a stolen State of Wisconsin income tax return check made payable to James P. and Darlene H. Bradley, dated March 11, 1981. The check was forged, cashed, and subsequently returned to the Wisconsin Department of Revenue."

[4] Wisconsin law and regulations establish a two-stage process for parole and probation revocation — case review and final revocation hearing. Wis. Stat. Ann. § 973.10 (West Supp. 1984); Wis. Admin. Code §§ HSS 31.01 et seq. (1981). Under case review, the probation officer and that officer's supervisor investigate the facts underlying an alleged violation. A supervisor is to review the allegations and conclude whether there is probable cause to believe a violation has occurred and, if so, whether revocation should be sought. Indeed, the purpose of case review "is to decide whether there is probable cause to believe the client committed a violation of the rules or conditions of supervision." Wis. Admin. Code § HSS 31.03(2) (1981).

(West Supp. 1984). See Wis. Admin. Code § HSS 328.22(2) (1981). See also *State ex rel. Johnson* v. *Cady,* 50 Wis.2d 540, 546 (1971). "[S]ince the proceedings of the demanding state are clothed with the traditional presumption of regularity," *Michigan* v. *Doran,* 439 U.S. at 290, the existence of a process resembling Wisconsin case review is likewise accorded a presumption of regularity which leads us to conclude that a determination of probable cause has been rendered by an independent Wisconsin decisionmaker. The conclusions reached by the demanding State are, under *Michigan* v. *Doran,* 439 U.S. at 290, entitled to full faith and credit in Massachusetts. See *Whitehouse, supra.*[5]

Accordingly, the order of the Superior Court denying the petition for a writ of habeas corpus is affirmed.

*So ordered.*

---

[5] Finally, we note the unique circumstances of our review in this case. Wisconsin officials do not seek the return of the petitioner pursuant to the Interstate Compact for the Supervision of Parolees and Probationers. See Wis. Stat. Ann. § 57.13 (West 1957 & Supp. 1984); G. L. c. 127, §§ 151A-151G. Nor do the papers forwarded indicate that the consent granted to the petitioner (to leave Wisconsin and reside in Massachusetts during probation) was contingent on "an irrevocable waiver of all procedure incidental to extradition." Wis. Stat. Ann. § 57.135 (West 1957 & Supp. 1984). Nor, again, is rendition sought on any of the following bases: that remaining within Wisconsin or promising to return upon demand was a condition of probation; that the petitioner's recent conviction in Massachusetts of receiving stolen property constitutes a violation of the terms of his Wisconsin probation; or, that the act of forging and cashing a stolen State check constitutes a crime in Wisconsin for which a valid arrest warrant has been issued. Nor has Wisconsin employed the procedure described in *State ex rel. Harris* v. *Schmidt,* 69 Wis.2d 668, 687 (1975) ("Since *Scarpelli,* the state department of health and social services has conducted preliminary hearings in the supervising state for out-of-state parolees and probationers, requesting the supervising state to conduct such probable cause hearing or, if it refuses, sending one of its examiners to conduct such hearing"). While the instant proceeding has been underway for more than two years, Wisconsin officials have not sought the petitioner's return on any basis other than that alleged in the original rendition papers. We have, therefore, reviewed the attempt to retake the petitioner under the rendition statutes, 18 U.S.C. § 3182 (1982), and G. L. c. 276, § 14, on a claim of probation violation by forging and cashing a stolen check. Cf. *State ex rel. Reddin* v. *Meekma,* 99 Wis.2d 56, 60 (1980), aff'd, 102 Wis. 2d 358, cert. denied, 454 U.S. 902 (1981) ("If a state chooses to proceed under an extradition statute rather than the compact, it must meet the requirements for extradition").