Myron L. JOHNSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A04–1103–CR–194.

Court of Appeals of Indiana.

Nov. 21, 2011.

Mark S. Lenyo, South Bend, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Brian Reitz, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Myron Johnson appeals the revocation of his probation. We affirm.

### Issue

The issue before us is whether the trial court had jurisdiction to revoke Johnson's probation.

### Facts

In September 2007, the St. Joseph County Superior Court ("trial court") sentenced Johnson to six years, with five years suspended to probation, following his conviction for Class B felony possession of cocaine. The trial court permitted the supervision of Johnson's probation to be transferred to Berrien County, Michigan. In July 2008, the trial court found that Johnson had violated the terms of his probation but continued Johnson on probation. The trial court at this time again expressly allowed Johnson's probation to continue to be supervised by Berrien County.

On July 2, 2010, a Berrien County probation officer notified the St. Joseph County Probation Department that Johnson had been convicted of misdemeanor theft in Michigan in June 2010. On August 23, 2010, the Berrien County probation officer sent a second notice to the St. Joseph County Probation Department stating that after Johnson was released from jail after

serving his sentence for theft, he failed to report to the Berrien County probation department. Johnson's whereabouts were unknown, and the house where he was supposed to be living in Benton Harbor, Michigan, appeared to be vacant.

On September 21, 2010, the St. Joseph County Probation Department filed a petition to revoke Johnson's probation in the trial court. The trial court scheduled an initial hearing for this petition on October 26, 2010. Johnson failed to appear for this hearing, and the trial court issued a bench warrant for his arrest.

At some point, Johnson apparently was arrested. The record is silent, however, as to whether he was apprehended in Michigan or Indiana. In any event, Johnson appeared, in custody, for an initial hearing held by the trial court on December 14, 2010. At that time, Johnson's attorney stated that "this interstate compact requires that certain things be done. And there's supposed to be a Record made, and somebody should have it. And it would probably be with the prosecutor's office or the probation office." Tr. p. 26. The trial court then scheduled an evidentiary hearing on the petition to revoke for February 11, 2011. At that hearing, defense counsel stated that he did not believe the Interstate Compact for Adult Offender Supervision ("Interstate Compact") had been complied with, with respect to Johnson's alleged commission of a probation violation in Michigan while under the supervision of a Berrien County probation officer and his return to Indiana to face a petition to revoke his probation.

The trial court rejected counsel's concerns. It noted that the original terms of Johnson's probation stated, "I waive extradition and agree to return or be returned to St. Joseph County, Indiana without the formality of an extradition hearing." *Id.* at 33. It also concluded that regardless of how Johnson was returned to Indiana, it had jurisdiction to consider the petition to revoke his probation. The trial court then proceeded to revoke Johnson's probation and ordered him to serve his previously-suspended five-year sentence. Johnson now appeals.

### Analysis

Johnson's sole issue on appeal is whether an alleged failure by authorities in Indiana and/or Michigan to strictly comply with the Interstate Compact deprived the trial court of jurisdiction to consider the State's petition to revoke his probation. Indiana courts must possess two kinds of jurisdiction to adjudicate a case: subject matter jurisdiction and personal jurisdiction. *K.S. v. State,* 849 N.E.2d 538, 540 (Ind.2006).[1] Subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which a particular proceeding belongs. *Id.* Personal jurisdiction is the power of a court to bring a person into its adjudicative process and render a valid judgment over a person. *Laflamme v. Goodwin,* 911 N.E.2d 660, 664 (Ind.Ct.App.2009). The existence of personal jurisdiction requires effective service of process to a defendant. *K.S.,* 849 N.E.2d at 540. Where non-resident defendants are concerned, the existence of personal jurisdiction in an Indiana court also requires that the defendant have sufficient minimum contacts with Indiana. *LinkAmerica Corp. v. Albert,* 857 N.E.2d 961, 967 (Ind.2006).

A judgment rendered without personal jurisdiction is void, although a defendant may waive the lack of personal

---

1. Johnson refers to a third type of jurisdiction in his brief, "jurisdiction over the particular case," but Indiana courts no longer recognize that type of jurisdiction. *K.S.,* 849 N.E.2d at 540.

jurisdiction if he or she responds or appears before the court and does not contest the lack of jurisdiction. *Harris v. Harris,* 922 N.E.2d 626, 632 (Ind.Ct.App. 2010). A lack of subject matter jurisdiction also renders a judgment void, and that issue can never be waived. *In re Guardianship of S.M.,* 918 N.E.2d 746, 748 (Ind. Ct.App.2009). Johnson claims primarily that the trial court lacked subject matter jurisdiction to revoke his probation, while the State reframes the issue as whether the trial court had personal jurisdiction over Johnson.

Johnson's argument is premised upon the Interstate Compact, of which Indiana and Michigan are parties. *See* Ind.Code §§ 11–13–4–1, 11–13–4.5–1; Mich. Comp. Laws Ann. § 798.101. All of the rules and bylaws adopted by the commission established by the Interstate Compact are binding upon the compacting states. *See* I.C. § 11–13–4.5–1, art. XIII(a). Under the Interstate Compact as applied to supervision of Johnson's probation in Michigan, Indiana is the "sending state" and Michigan is the "receiving state." At issue here is Michigan and Indiana's compliance, or alleged lack thereof, with current Rule 5.108 of the Interstate Compact, which provides:

> Probable Cause hearing in receiving state
>
> (a) An offender subject to retaking for violation of conditions of supervision that may result in a revocation shall be afforded the opportunity for a probable cause hearing before a neutral and detached hearing officer in or reasonably near the place where the alleged violation occurred.
>
> (b) No waiver of a probable cause hearing shall be accepted unless accompanied by an admission by the offender to one or more significant violations of the terms or conditions of supervision.
>
> (c) A copy of a judgment of conviction regarding the conviction of a new felony offense by the offender shall be deemed conclusive proof that an offender may be retaken by a sending state without the need for further proceedings.
>
> (d) The offender shall be entitled to the following rights at the probable cause hearing:
>
> > (1) Written notice of the alleged violation(s);
> >
> > (2) Disclosure of non-privileged or nonconfidential evidence regarding the alleged violation(s);
> >
> > (3) The opportunity to be heard in person and to present witnesses and documentary evidence relevant to the alleged violation(s);
> >
> > (4) The opportunity to confront and cross-examine adverse witnesses, unless the hearing officer determines that a risk of harm to a witness exists.
>
> (e) The receiving state shall prepare and submit to the sending state a written report within 10 business days of the hearing that identifies the time, date and location of the hearing; lists the parties present at the hearing; and includes a clear and concise summary of the testimony taken and the evidence relied upon in rendering the decision. Any evidence or record generated during a probable cause hearing shall be forwarded to the sending state.
>
> (f) If the hearing officer determines that there is probable cause to believe that the offender has committed the alleged violations of conditions of supervision, the receiving state shall hold the offender in custody, and the sending state shall, within 15 business days of receipt of the hearing officer's report, notify the receiving state of the decision to retake or other action to be taken.

(g) If probable cause is not established, the receiving state shall:

(1) Continue supervision if the offender is not in custody.

(2) Notify the sending state to vacate the warrant, and continue supervision upon release if the offender is in custody on the sending state's warrant.

(3) Vacate the receiving state's warrant and release the offender back to supervision within 24 hours of the hearing if the offender is in custody.

http://www.interstatecompact.org/Link Click.aspx?fileticket=bqpt53W3oQ0=& tabid=89 (last visited Nov. 1, 2011). There is no evidence in the record that any such probable cause hearing ever took place in Michigan for Johnson.[2]

We conclude that any failure by Michigan and Indiana to strictly comply with the Interstate Compact with respect to a probable cause hearing for Johnson before his transfer back to Indiana did not deprive the trial court of jurisdiction to revoke his probation, either as to subject matter or personal jurisdiction. As for subject matter jurisdiction, there is no question that the trial court here generally had jurisdiction to rule on petitions to revoke probation, such as Johnson's. We also note that a transfer of supervision of a probationer to a different state under the Interstate Compact is not a transfer of jurisdiction to that state. *Morgan v. State,* 691 N.E.2d 466, 468 (Ind.Ct.App. 1998). Thus, the trial court's agreement that Johnson's probation could be supervised by Michigan authorities was not an abdication of its subject matter jurisdiction to revoke Johnson's probation at a later date.

Regarding personal jurisdiction, there can be no doubt that Johnson had sufficient contacts with Indiana. Johnson also makes no argument that he was not properly served with notice of the probation revocation proceeding. As for any failure to strictly comply with the Interstate Compact before Johnson was returned to Indiana, and assuming for the sake of argument that he was forcibly returned to this state from Michigan, courts have held for many years that it is irrelevant for jurisdictional purposes precisely how a defendant is brought before a court to answer criminal charges. In the seminal case of *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886), a criminal defendant alleged that he could not be tried in Illinois for larceny because he had been forcibly removed from Peru to Illinois and extradition formalities were not followed. The Supreme Court held that the manner in which the defendant was brought to trial in Illinois was irrelevant, even if it violated an extradition treaty with Peru. It stated:

> There are authorities of the highest respectability which hold that such forcible abduction is no sufficient reason why the party should not answer when brought within the jurisdiction of the court which has the right to try him for such an offense, and presents no valid objection to his trial in such court.

*Ker,* 119 U.S. at 444, 7 S.Ct. at 229. Much more recently, the Supreme Court affirmed *Ker's* continued viability. *See U.S. v. Alvarez–Machain,* 504 U.S. 655, 669–70, 112 S.Ct. 2188, 2196–97, 119 L.Ed.2d 441 (1992).

This court similarly has observed, in a case concerning an extradited defendant, that it is not improper " 'to return one

---

**2.** We also note that the primary basis for revoking Johnson's probation was his conviction for a new offense. That offense was a misdemeanor, not a felony. Therefore, under subsection (c) of Rule 5.108, Johnson was not automatically subject to rendition back to Indiana on the basis of the conviction.

from another state, even by force and without the formality of extradition procedure, to face criminal charges in the state to which he is returned. If the party is before the court, the court will not inquire how he got there. This is elementary.'" *Martin v. State*, 176 Ind.App. 503, 506, 376 N.E.2d 498, 500 (1978) (quoting *Sweet v. Howard*, 155 F.2d 715, 717 (7th Cir. 1946), *cert. denied* ). We also noted that the purpose of interstate extradition agreements was to assist states in bringing criminals to justice, "not to help criminals escape justice because certain technical procedures have not been followed." *Id.* at 507, 376 N.E.2d at 500. Given the wealth of authorities holding that failures to strictly comply with extradition procedures do not deprive a court of the ability to try a defendant who appears before it, we likewise conclude that Michigan and Indiana's alleged failure to comply with the Interstate Compact did not deprive the trial court of personal jurisdiction over Johnson, and that it had the power to revoke his probation. We further note that nothing in the Interstate Compact provides that a "sending state" is precluded from revoking the probation of a defendant if the "receiving state" did not conduct a probable cause hearing as contemplated by Rule 5.108.

Although we have ruled against Johnson on the jurisdictional issue, which is the only issue he raises, we would be remiss if we did not acknowledge that the evident purpose behind Rule 5.108 is not jurisdictional, but to protect a probationer's due process rights. Rule 5.108 evidently is part of the Interstate Compact because of the Supreme Court's holding in *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656 (1973), which held

that a defendant facing revocation of probation is entitled to the same due process rights as a defendant facing revocation of parole, as outlined in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Among those rights are the right to not only a final revocation hearing but also a preliminary hearing. *Gagnon*, 411 U.S. at 782, 93 S.Ct. at 1760.[3] "At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing." *Id.* at 786, 93 S.Ct. at 1761. Additionally, *Morrissey* specified that the preliminary hearing should "be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available," in order to determine whether there is probable cause to believe a defendant has violated parole. *Morrissey*, 408 U.S. at 485, 92 S.Ct. at 2602. Rule 5.108, by requiring a preliminary probable cause hearing in the "receiving state" before return of the defendant to the "sending state," embodies the rules of *Morrissey* and *Gagnon*. Failure to conduct a preliminary probable cause hearing in the "receiving state" may deprive a probationer of due process. *See Fisher v. Crist*, 182 Mont. 124, 594 P.2d 1140, 1142 (1979); *State of Cal. v. Crump*, 180 N.J.Super. 27, 433 A.2d 791, 793–94 (1981); *cf. Petition of Hayes*, 18 Mass.App.Ct. 583, 468 N.E.2d 1083, 1086 (1984) (holding *Gagnon/Morrissey* preliminary hearing did not have to be held in "asylum state" (i.e., "receiving state") before rendition of defendant to "demanding state" (i.e., "sending state")

---

**3.** The *Gagnon* court acknowledged that the rule it announced would require modification of the interstate compact then governing interstate supervision of probationers. *See Gagnon,* 411 U.S. at 782 n. 5, 93 S.Ct. at 1760 n. 5.

where alleged probation violation actually occurred in "demanding state").

Here, however, one of the conditions of Johnson's probation stated, "I waive extradition and agree to return or be returned to St. Joseph County, Indiana without the formality of an extradition hearing." Tr. p. 33. We have uncovered no Indiana cases addressing the validity of a prospective waiver of rights to an extradition hearing as a condition of probation. Courts in several other jurisdictions have addressed the issue, however, and generally have held that such waivers are enforceable. *See, e.g., Goode v. Nobles,* 271 Ga. 30, 518 S.E.2d 122, 123–24 (1999); *People v. Velarde,* 739 P.2d 845, 849 (Colo.1987); *State v. Maglio,* 189 N.J.Super. 257, 459 A.2d 1209, 1212 (1983). It is only where there is evidence that such a waiver was obtained by coercion that it would not be enforceable. *See Maglio,* 459 A.2d at 1212. Johnson has made no argument that he was improperly coerced into waiving his right to formal extradition proceedings in the event he was suspected of violating his probation. We also believe that the language of the waiver clearly contemplates waiver of a preliminary probable cause hearing as outlined in Rule 5.108 of the Interstate Compact. As such, we conclude that Johnson's waiver should be given full effect and, therefore, he cannot claim error in the alleged failure of Michigan to conduct a preliminary probable cause hearing as required by the Interstate Compact.[4]

### Conclusion

The alleged failure of Michigan and Indiana authorities to strictly comply with the Interstate Compact, particularly with respect to the conducting of a preliminary probable cause hearing in Michigan, did not deprive the trial court of either subject matter jurisdiction over Johnson's probation revocation or personal jurisdiction over him. Additionally, Johnson waived strict compliance with the Interstate Compact when he agreed as one of the terms of his probation to waive formal extradition proceedings. We affirm the revocation of Johnson's probation.

Affirmed.

ROBB, C.J., and BRADFORD, J., concur.

---

4. Part of the Indiana Code adopting the Interstate Compact states, "All legal requirements to obtain extradition of fugitives from justice are hereby expressly waived." I.C. § 11–13–4–1(3). We are reluctant to rely upon this statutory waiver, as it arguably conflicts with Rule 5.108 of the Interstate Compact. The Introduction to the Interstate Compact states,

"To the extent that state statutes, rules or policies conflict with the terms of the compact or rules duly promulgated by the Commission, such statutes, rules or policies are superseded by these rules to the extent of any conflict." http://www.interstatecompact.org/ LinkClick.aspx?fileticket=bqpt53W3oQ0=& tabid=89 (last visited Nov. 1,2011).